No. 19-2091

UNITED STATE COURT OF APPEALS
FOR THE TENTH CIRCUIT

---

ESTEBAN ALFARO-HUITRON, ET AL.,
Appellants,
v.
CERVANTES AGRIBUSINESS, ET AL.,
Appellees.

---

Civil Appeal from the United States District Court
District of New Mexico, Civil No. 2:15-210
The Honorable Judith C. Herrera

---

**ANSWER BRIEF
OF APPELLEES CERVANTES AGRIBUSINESS
AND CERVANTES ENTERPRISES, INC.**

---

Joseph Cervantes
901 E. University Ave., Bldg. 965L
Las Cruces, NM 88001
(575) 526-5600
Joseph@cervanteslawnm.com
and
L. Helen Bennett, P.C.
P.O. Box 4305
Albuquerque, NM 87196-4305
(505) 321-1461
hbennett@swcp.com
*Attorneys for Appellees*

**Oral Argument Requested**
Filed November 5, 2019

## <u>Rule 26.1 Corporate Disclosure Statement</u>

There is no parent corporation nor any publicly held corporation that owns 10% or more of the stock of either Cervantes Agribusiness or Cervantes Enterprises, Inc.

## <u>TABLE OF CONTENTS</u>

Table of Contents ............................................................................. i

Table of Authorities ........................................................................ iii

Introduction and Summary of Answering Argument ..................................... 2

Statement of the Issues...................................................................... 4

Statement of Relevant Facts.............................................................. 4

Standard of Review.......................................................................... 9

Argument and Authority .................................................................. 11

I.  The District Court correctly determined as a matter of law that
Campos/WKI was not the Cervantes Defendants' agent, such that
the Cervantes Defendants could be liable for WKI's breach of contract. .... 11

    a.  There was No Breach of Contract by
    the Cervantes Defendants. ................................................................ 11

    b.  WKI's possible independent contractor status
    does not create evidence of an agency relationship
    with the Cervantes Defendants. .......................................................... 13

    c.  There was no actual, implied, or apparent agency
    agreement or relationship between the Cervantes
    Defendants and WKI or Mr. Campos................................................. 15

        i.  The Agreement does not establish that WKI or
        Mr. Campos were the agents of the Cervantes Defendants. .... 16

        ii. The testimony of an unconnected third party
        does not establish agency. ....................................................... 18

iii. A desire for a particular end result does not
establish agency..........................................................................19

iv. Adherence to the H-2A program mandates
does not establish agency. .........................................................20

v. There was no implied, suggested, or inferential
control indicating agency. ..........................................................21

vi.  WKI's alleged undercapitalization
does not make WKI an agent. ....................................................21

II.  The Cervantes Defendants and WKI did not jointly employ
the Plaintiffs under the AWPA, and there is no evidence of
a "joint employment" agreement between the Cervantes
Defendants and WKI or Mr. Campos. ...........................................23

1. Joint Employment under the AWPA. ......................................24

a. Power to Direct, Control, or Supervise...........................26

b. Direct or Indirect Power to Hire or Fire,
Modify Employment Conditions, or Determine
Rates or Methods of Pay.....................................................29

c. Permanency and Duration...............................................30

d. Whether the services rendered were repetitive and rote.................31

e. Integral part of the overall business operation................................32

f. Work performed on the agricultural employer's premises .............32

g. Responsibilities ordinarily performed by employers ....................33

h. Weighing of Factors ......................................................35

III.  The District Court specifically addressed the absence of
evidence to support the Plaintiffs' claims for civil conspiracy,
and Plaintiffs fail to support claims for abandonment, and damages...........36

1. Plaintiffs' Conspiracy Claim....................................................36

2.  Plaintiffs' claims for "Abandonment" and Damages. ............................. 39

Conclusion ............................................................................................. 40

Oral Argument is Requested ................................................................... 40

CERTIFICATES OF SERVICE AND
DIGITAL SUBMISSION COMPLIANCE .................................................. 41

## **GLOSSARY**

APPX................. Appendix filed by Appellants - Referenced by page number

AWPA ..................................................... Agricultural Worker Protection Act

DOL......................................................... United States Department of Labor

FLSA ...................................................................... Fair Labor Standards Act

H-2A.................... Foreign Guest Worker Program (8 U.S.C. Section 1101(a)

WKI........................................... Defendant WKI Outsourcing Solutions, Inc.

# <u>TABLE OF AUTHORITIES</u>

## <u>Tenth Circuit Authorities</u>

*Adams v. Am. Guarantee & Liab. Ins. Co.*,
  233 F.3d 1242 (10th Cir. 2000) ............................................................ 10

*Bryant v. O'Connor*, 848 F.2d 1064 (10th Cir.1988)........................ 10, 28, 31

*Conaway v. Smith*, 853 F.2d 789 (10th Cir. 1988......................................... 11

*Palladium Music, Inc. v. EatSleepMusic, Inc.*,
  398 F.3d 1193 (10th Cir. 2005) ............................................................ 11

*Samson Res. Co. v. Abraxas Wamsutter LP*,
  117 Fed. Appx. 641 (10th Cir. 2004 ...................................................... 17

*Turner v. Public Service Co. of Colorado*,
  563 F.3d 1136 (10th Cir. 2009) ............................................................ 10

*Ulissey v. Shvartsman*, 61 F.3d 805 (10th Cir. 1995)................................... 10

*Utah Power & Light Co. v. Fed. Ins. Co.*,
  983 F.2d 1549 (10th Cir. 1993) ............................................................ 35

## <u>Authorities from Other Jurisdictions</u>

*Aimable v. Long & Scott Farms*, 20 F.3d 434 (11th Cir.) ...................... 24, 26

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................ 22

*Antenor v. D & S Farms*, 88 F.3d 925 (11th Cir.1996) ................... 24, 25, 26

*Beliz v. W.H. McLeod & Sons Packing Co.*,
  765 F.2d 1317 (5th Cir. 1985) ............................................................. 17

*Cain v. Champion Window Co. of Albuquerque, LLC*,
  2007-NMCA-085, 164 P.3d 90................................................................ 37

*Carlsberg Mgmt. Co. v. State Taxation & Revenue Dep't*,
  1993-NMCA-121, 861 P.2d 288............................................................... 15

*Celaya v. Hall, 2004-NMSC-005, 85 P.3d 239* ........................................... 16

*Celotex v. Catrett*,
    477 U.S. U.S. 317, 106 S.Ct. 2548 (1986)...................................... 9, 10, 11

*Charles v. Burton*, 169 F.3d 1322 (11th Cir. 1999)......................... 26, 30, 32

*Chavez v. Sundt Corp.*, 1996-NMSC-046, 920 P.2d 1032 .......................... 14

*Ettenson v. Burke*, 2001–NMCA–003, 17 P.3d 440............................... 37, 38

*Garcia-Celestino v. Ruiz Harvesting, Inc.*,
    898 F.3d 1110 (11th Cir. 2018) ...................................................... 29, 35

*Goldberg v. Whitaker House Coop., Inc.*,
    366 U.S. 28, 81 S.Ct. 933 (1961)............................................................ 24

*Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172 (11th Cir. 2012).............. 29

*Martinez-Mendoza v. Champion Int'l Corp.*,
    340 F.3d 1200 (11th Cir. 2003) ................................. 26, 27, 29, 31, 33, 34

*Matsushita Electric Industrial Co. v. Zenith Radio Corporation*,
    475 U.S. 574, 106 S.Ct. 1348 (1986)...................................................... 11

*Rodriguez et al. v. SGLC, Inc.*,
    2012 WL 5704403, 2:08-cv-01971-MCE-KJN
    (E.D. Cali. Nov. 15, 2012) ................................................................27-28

*San Juan Agr. Water Users Ass'n v. KNME-TV*,
    2011-NMSC-011, 257 P.3d 884 ...................................................... 15, 22

*Tercero v. Roman Catholic Diocese*,
    2002–NMSC–018, 48 P.3d 50 ................................................................ 15

UJI 13-402 NMRA................................................................................... 15

*Vigil v. Pub. Serv. Co. of New Mexico*,
    2004-NMCA-085, 94 P.3d 813........................................................ 37, 38

**Federal Statutes and Rules**

29 U.S.C. § 203 ........................................................................................... 24

29 U.S.C. §§ 1801-1854 ............................................................................. 23

29 U.S.C. § 1801 ......................................................................................... 24

29 U.S.C. § 1822 ......................................................................................... 23

Fed.R.Civ.P. 1 ............................................................................................. 10

Fed.R.Civ.P. 56 ..................................................................................... 10, 11

**Federal Regulations**

20 C.F.R. § 655.135(k) ............................................................................... 34

29 C.F.R. § 500.20 ................................................................. 24, 25, 26, 35, 36

**Other Authority**

Restatement (Second) of Agency § 2 ..................................................... 13-14

Restatement (Second) of Agency § 220 ..................................................... 16

## INTRODUCTION AND SUMMARY OF ANSWERING ARGUMENT

Plaintiffs allege the District Court erred in its resolution by summary judgment of certain causes of action against Cervantes Agribusiness and Cervantes Enterprises, Inc. (collectively, the Cervantes Defendants) breach of contract, violation of the Agricultural Worker Protection Act (AWPA), civil conspiracy, abandonment, and damages. The allegations are based on a one page Agreement for Outsourcing Support (Agreement), which was signed by the Cervantes Defendants' general manager, Dino Cervantes. [Appx. 654] Defendant Jaime Campos signed the Agreement on behalf of Defendant WKI Outsourcing Solutions, LLC (WKI). The Agreement required WKI to provide fifteen agricultural workers to work for the Cervantes Defendants from November 10, 2011 to March 9, 2012. The Agreement stated that the workers would be skilled farm laborers and would be United States citizens, legal residents, or foreign workers with temporary H-2A working visas. It is undisputed that WKI failed to provide the fifteen agricultural workers on the date specified or anytime thereafter. It is undisputed that Plaintiffs knew nothing of the Cervantes Defendants when Plaintiffs were allegedly recruited by WKI. It is undisputed that Plaintiffs never performed work for the Cervantes Defendants.

1

There are no material facts that could support holding the Cervantes Defendants liable to Plaintiffs on any theory, and no genuine issue of material fact requiring a trial on the merits. Plaintiffs can offer only speculation and conjecture about what might have been the working arrangement if they had actually come to work for the Cervantes Defendants. The Agreement upon which Plaintiffs rely nowhere mentions or references Plaintiffs, was not signed by Plaintiffs, was not seen by Plaintiffs until this lawsuit was filed, and is not enforceable by Plaintiffs against the Cervantes Defendants. None of the documents Plaintiffs rely upon to support their claim of an employment contract between Plaintiffs and WKI is binding upon the Cervantes Defendants. There is no contractual relationship between Plaintiffs and the Cervantes Defendants. There is no evidence that the Cervantes Defendants authorized Mr. Campos or WKI to act as its agent in dealing with the Plaintiffs or anyone else, and no evidence even suggests that the Plaintiffs relied upon any alleged manifestation of agency.  Plaintiffs' theory about an alleged "conspiracy" to violate federal law is meritless.

The District Court properly evaluated the summary judgment record and granted summary judgment to the Cervantes Defendants. [Appx. 687, 963, 982] Its decision should be affirmed in all respects.

## STATEMENT OF THE ISSUES

I.  The District Court correctly determined as a matter of law that Mr. Campos was not an authorized agent of the Cervantes Defendants.

II.  The Cervantes Defendants did not jointly employ the Plaintiffs under the AWPA, and there is no evidence of a "joint employment" agreement between the Cervantes Defendants and WKI.

III.  The district court specifically addressed the absence of evidence supporting the Plaintiffs' claims for civil conspiracy, and Plaintiffs have failed to support any argument for abandonment or damages.

## STATEMENT OF RELEVANT FACTS

It is undisputed that Mr. Campos founded WKI, a farmworker labor contractor agency that he created to contract with farmers in southern New Mexico.  Mr. Campos understood the farmers had a farm worker shortage that was negatively impacting their harvests. [Appx. 604] WKI was in the process of becoming certified by the U.S. Department of Labor to obtain temporary work visas, known as H-2A visas, for Mexican farm laborers who could fill the need for workers.  No representative from either Cervantes Defendant entity was quoted or mentioned in the article.  [Appx. 604-607]

Mr. Campos was deposed and explained that the purpose of WKI was to get H-2A workers to serve New Mexico farms. [Appx. 350, 16:11-15] Mr. Campos explained that the labor shortage was allowing farm laborers to take advantage of the farmers by working unpredictable hours, missing days of work, and even

3

drinking beer on the job, but the farmers could not fire them because there was no one else to do the work. [Appx. 351, 19:14-20:7] According to Mr. Campos, the lack of reliable workers sometimes led farmers to hire undocumented laborers instead. [Appx. 351, 18:17-20:7]  Mr. Campos knew of the H-2A visa program had been created as a legal way to bring foreign laborers to the United States.  He believed the H-2A program could help both the farmers and the foreign laborers who wanted to come do the work in the United States. [Appx. 351, 18:24-19:11, 20:25-21:12]

Mr. Campos explained that he started in 2011 by contacting area farmers to discuss their expectations for the following growing season. [Appx. 357, 42:5-17] Mr. Campos stated that most farmers told him they were planning on growing smaller crops because they did not have a reliable labor force to do a full harvest. [Appx. 357, 42:5-17] During his meetings with farmers, Mr. Campos explained that his plan was to apply for an H-2A visa for workers whom WKI would then outsource to the farmers. [Appx. 357, 43:20-23] He also informed them that the ability to bring those workers was not guaranteed, but was subject to the approval of the U.S. Department of Labor (DOL). [Appx. 357, 44:21-45:17] Mr. Campos estimated he met with about ten farmers on behalf of WKI. [Appx. 358, 47:13-16]

Representatives from five southern New Mexico farms signed agreements to accept workers from WKI.  [Appx. 474-476, 486]  WKI used the same written

Agreement of Outsourcing Support form, written by Mr. Campos, for each of the farms that agreed to accept WKI workers. [Appx. 366, 7:9-22] Mr. Campos gave the same presentation to all the farmers, during which he explained that he would seek H-2A workers and would include the signed Agreement in his application for those workers. [Appx. 366, 8:4-12; Appx. 367, 10:19-11:8] It is undisputed that Mr. Campos met with Mr. Cervantes on September 10, 2011 at Cervantes Enterprises' office in Vado, New Mexico. [Appx. 395, 7:14-17; Appx. 397, 14:21-15:5]

Mr. Cervantes testified at his deposition that he agreed to meet with Mr. Campos because "[Mr. Campos] was proposing a new business … involving foreign workers through the H-2A program, and it sounded interesting to me." [Appx. 398-399, 21:20-22:3] There is no evidence to support a finding that Mr. Cervantes told Mr. Campos where to find labor; Mr. Campos did not tell Mr. Cervantes that the workers would come from any particular state or country. [Appx. 378, 77:18—379, 78:6] Mr. Campos never spoke to any other representative of Cervantes Enterprises other than Dino Cervantes. [Appx. 379, 78:7-11]

Mr. Cervantes signed the Agreement, stating that the Cervantes Defendants would employ fifteen agricultural workers provided by WKI from November 10, 2011 to March 9, 2012. [Appx. 474]  Mr. Campos admitted he did not understand

the distinction between Cervantes Enterprises, Inc. and Cervantes Agribusiness. [Appx. 373, 51:12-52:6] Mr. Campos filled in the name Cervantes Agribusiness on the form because that was the name on the business card he received from Mr. Cervantes. [Appx. 373, 52:16-23] It is undisputed that the Agreement names Cervantes Agribusiness but states the address for Cervantes Enterprises, and describes work done by Cervantes Enterprises ("Processing and Packing: Dry Red Chile and Other Spices"). [Appx 474]  On WKI's H-2A application to the DOL, under the heading "Locations and Directions to Work Site," Mr. Campos listed Cervantes Enterprises' name and address. [Appx. 486]

The Agreement specifically names WKI and Cervantes Agribusiness as parties. [Appx. 474] The Agreement states that it is "for services as a work force provider," such work force consisting of "skilled farm labor workers; U.S. Citizens, legal residents, or foreign workers with temporary working visas (H-2A)." [Appx 474] The Agreement was to be effective from November 10, 2011 to March 9, 2012.  [Appx. 474]  According to the Agreement WKI would "provide 15 farm workers on a daily basis" and would be responsible for paying each of those workers. [Appx. 474] The Agreement stated the workers would be responsible for "Processing & Packing: Dry Red Chile & Other Spices." [Appx. 474] The Agreement was signed and dated September 10, 2011 by Mr. Cervantes and Mr. Campos. [Appx. 474] That was the only meeting concerning WKI between Mr.

Campos and Mr. Cervantes. [Appx. 396, 12:10 -20] Mr. Campos left the offices and Mr. Cervantes did not hear from him again. [Appx. 188-89, Appx. 398, 18:6-20:9]

The process of WKI's subsequent actions in applying to be eligible to hire access foreign laborers through the federal H-2A visa program are detailed in the District Court's Memorandum Opinion and Order [Appx. 687-723].  The relevant facts to this matter about the process WKI attempted to complete are that WKI's application listed five farms and packing companies in southern New Mexico as potential worksites, including Cervantes Enterprises. [Appx. 486] It also stated that the workers would be paid $9.71 per hour. [Appx. 481] Mr. Campos included his agreement with Mr. Cervantes, which he told Mr. Cervantes he would do. [Appx. 355, 35:12-22] Federal law required Mr. Campos to include the agreements with the farmers as part of the H-2A application. [Appx. 355, 35:12-12] *See* 20 C.F.R. § 655.132(b)(4) (stating that an H-2A application must include "[c]opies of the fully-executed work contracts with each fixed-site agricultural business.") Mr. Campos also included ETA Form 790 that contained a detailed description of the job, worksite, and pay. [Appx. 80]

The Cervantes Defendants took no part in the application process, knew nothing of WKI's activities, and were not updated by WKI about the status. [Appx. 188-189, Appx. 398, 18:6-20:9] WKI was ultimately unsuccessful in obtaining

workers and eventually abandoned the effort.  Mr. Cervantes ultimately relied on

another farm labor contractor to obtain farm workers for the Cervantes Defendants.

It is undisputed that Plaintiffs never spoke with the Cervantes Defendants

directly, but communicated only with WKI and Mr. Campos. [Appx. 191-230]  It

is undisputed that Plaintiffs knew nothing about the Cervantes Defendants, never

presented themselves to work for either Cervantes Defendant, never actually

worked for a Cervantes Defendant, and were never paid any wages by the

Cervantes Defendants because they never worked for the Cervantes Defendants.

[Appx. 191-230]  Plaintiffs nevertheless insist that the Cervantes Defendants are

liable for Plaintiffs' alleged and unspecified statutory or actual damages because

Plaintiffs allege that Mr. Campos, as representative of WKI, was acting as the

Cervantes Defendants' agent or co-conspirator. [OB 29-37, 46-48]

The Cervantes Defendants filed motions for summary judgment [Appx. 167,

231, 622, 724], showing they were entitled to judgment as a matter of law on all of

Plaintiffs' claims. Additional facts and arguments will be discussed as needed

below.

## STANDARD OF REVIEW

Summary judgment is not a "disfavored procedural shortcut[,]" but a

procedure "designed to secure the just, speedy and inexpensive determination of

every action." *Celotex v. Catrett*, 477 U.S. U.S. 317, 327, 106 S.Ct. 2548 (1986)

(quoting Fed.R.Civ.P. 1).  Summary judgment is appropriate "when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Initially, the movant bears the responsibility to inform the District Court of the basis for the motion, and to identify the portions of [the record] that demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. If this burden is met, then the non-moving party must set forth specific facts showing a genuine dispute for trial. *Id.* at 324.  A party's response to a motion for summary judgment cannot rest on speculation or suspicion, and a party may not escape summary judgment in the mere hope that something will turn up at trial. *Bryant v. O'Connor*, 848 F.2d 1064, 1067 (10th Cir.1988).

A fact is material if it has the potential to affect the outcome of a dispute under applicable law. *Ulissey v. Shvartsman*, 61 F.3d 805, 808 (10th Cir. 1995). An issue is genuine if a rational trier of fact could find for the non-moving party. *Adams v. Am. Guarantee & Liab. Ins. Co.*, 233 F.3d 1242, 1246 (10th Cir. 2000). In performing this analysis, the factual record and any reasonable inferences therefrom are construed in the light most favorable to the non-moving party. *Id.* at 1246.  However, a mere "scintilla of evidence" is insufficient to avoid summary judgment. *Turner v. Public Service Co. of Colorado*, 563 F.3d 1136, 1142 (10th Cir. 2009). Non-movants "must proffer facts such that a reasonable jury could find

9

in [their] favor." *Id.*  A party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corporation*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

Plaintiffs' evident hope that the jury could speculate at trial in the direction of Plaintiffs' theories is insufficient to justify the reversal of the District Court's grant of summary judgment.  *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005).  Non-moving litigants must demonstrate to the district court some affirmative indication that their version of relevant events is not fanciful. *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

**ARGUMENT AND AUTHORITY**

**I.  The District Court correctly determined as a matter of law that Campos/WKI was not the Cervantes Defendants' agent, such that the Cervantes Defendants could be liable for WKI's breach of contract.**

    **a.  There was No Breach of Contract by the Cervantes Defendants.**

Even assuming the document Mr. Cervantes signed could be considered a contract enforceable by Plaintiffs against the Cervantes Defendants, Plaintiffs still

10

lack any evidence that the contract was ever breached by the Cervantes Defendants. The evidence established that Mr. Cervantes met Mr. Campos on only the one occasion at Mr. Cervantes's office. At that meeting Mr. Campos agreed, on behalf of WKI, to supply a specified number of unknown farm worker employees, who would be recruited and hired by WKI, to work on the Cervantes Defendants' properties. The Cervantes Defendants agreed to hire fifteen workers supplied by WKI, who WKI was to present to begin work on November 11, 2011. The document signed by Mr. Cervantes, upon which Plaintiffs' case rests, does not include any other requirement of the Cervantes Defendants.

Even if the document could be construed to contain an implied contractual term whereby Cervantes Defendants agreed to pay WKI for supplying Plaintiffs as farm workers, WKI first had the duty to supply Plaintiffs as workers. Only after WKI supplied farm workers did the Cervantes Defendants have any duty, and that duty was to WKI, not Plaintiffs. Plaintiffs have abandoned their claim that they were entitled to enforce any contract as third-party beneficiaries, but even if Plaintiffs did have a right of enforcement, the uncontroverted evidence is that WKI never supplied any farm workers, much less Plaintiffs, to either Cervantes Defendant. After the initial meeting with Mr. Cervantes, Jaime Campos and WKI had no subsequent communication with Mr. Cervantes or either Cervantes Defendant concerning WKI's plan to provide farm workers to farmers. After the

11

one meeting between Mr. Cervantes and WKI, WKI never contacted and spoke to Mr. Cervantes again about supplying farm workers. Plaintiffs never attempted to work for either Cervantes Defendant.

Because there was no tender of performance by either WKI or the Plaintiffs, there was no breach of any contract by the Cervantes Defendants. In the absence of a breach, Plaintiffs' claims against the Cervantes Defendants fail as a matter of law, and there are no genuine issues of fact requiring a jury trial in this case.

### b.  WKI's possible independent contractor status does not create evidence of an agency relationship with the Cervantes Defendants.

Plaintiffs' Opening Brief alleges legal error in the District Court's reasoning regarding the degree of control exercised by the Cervantes Defendants over WKI. [OB at 24-29]  Plaintiffs insist that the District Court improperly "conflated the test for agency with the test for distinguishing between employees and independent contractors."  [OB 25]  Plaintiffs insist that this alleged analytical error is sufficient to require reversal, and darkly opine that the District Court's analysis may have "far-reaching unintended consequences unless it is reversed." [OB 29] Plaintiffs' opening gambit is a nonstarter.

It is undisputed that "[a]n independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. He may or may not be an agent."  Restatement

(Second) of Agency § 2. An "independent contractor" is "a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking." *Chavez v. Sundt Corp.*, 1996-NMSC-046, ¶¶ 9-10, 920 P.2d 1032, 1036 (*quoting* Restatement (Second) of Agency § 2).

The District Court's analysis of the "right of control" factors was undertaken to evaluate whether there was any evidence that either Mr. Campos or WKI was the agent of the Cervantes Defendants. For purposes of the agency evaluation, it does not matter whether Mr. Campos or WKI were independent contractors who failed to provide the contracted for service or whether WKI/Campos and the Cervantes Defendants simply entered into a prospective business arrangement that was never fulfilled because WKI never performed. The question for purposes of this case is whether there is any evidence to support a finding that WKI was the Cervantes Defendants' agent for purposes of Plaintiffs.

There is no evidence to show that Mr. Campos or WKI ever informed Plaintiffs they were acting on behalf of the Cervantes Defendants. Plaintiffs all testified they had never heard of the Cervantes Defendants. Plaintiffs were never told they would be working for any particular farmer, much less the Cervantes Defendants. As will be demonstrated below, the undisputed facts showed no

control by the Cervantes Defendants over any aspect of WKI or WKI's recruitment efforts as a farm labor contractor.

### c.  There was no actual, implied, or apparent agency agreement or relationship between the Cervantes Defendants and WKI or Mr. Campos.

An agent refers to a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair or does some service for the principal, with or without compensation. *Tercero v. Roman Catholic Diocese*, 2002–NMSC–018, ¶ 12, 48 P.3d 50. An agency relationship does not arise until "the principal has in some manner indicated that the agent is to act for him, and that the agent so acts or agrees to act on his behalf *and subject to his control*." *San Juan Agr. Water Users Ass'n v. KNME-TV*, 2011-NMSC-011, ¶ 16, 257 P.3d 884, 889 (emphasis added). Once an agency relationship is created, a principal is generally liable for the actions of the agent when the agent was acting within the scope of the agent's employment *and the principal had the right to control* the manner in which the agent performed the action. UJI 13-402 NMRA. A principal's control over the agent is the *key characteristic* of an agency relationship. *Carlsberg Mgmt. Co. v. State Taxation & Revenue Dep't*, 1993-NMCA-121, ¶ 12, 861 P.2d 288, 291.  The existence of an agent's authority is based on "words or acts of the principal, and not the representations or acts of the agent." *Tercero*, 2002–NMSC–018, ¶ 12.

14

"Under an agency analysis, the principal's right to control the individual performing the work often distinguishes an employee [or agent] from an independent contractor," *Celaya v. Hall*, 2004-NMSC-005, ¶ 11, 85 P.3d 239, 242. However, the right to control is only one among many factors to consider, including: whether the hired party is engaged in a distinct business or occupation, whether the type of work is customarily done under the direction of the employer or without supervision, the skill level required by the type of work in question, which party provides the supplies and workplace used by the hired party to complete the work, the length of time of the employment, the manner of calculating payment, whether the work is part of the employer's regular business, the parties' belief that there is an agency relationship, and whether the principal is in business. Restatement (Second) of Agency § 220; *see also Celaya*, 2004-NMSC-005, ¶ 14 (recognizing the New Mexico Supreme Court's adopting of the Second Restatement approach).

### i.  The Agreement does not establish that WKI or Mr. Campos were the agents of the Cervantes Defendants.

Plaintiffs insist that the Agreement is sufficient in and of itself to create a genuine issue of fact concerning whether WKI was acting as an agent of the Cervantes Defendants at the time WKI recruited and entered into employment agreements with Plaintiffs, such that the Cervantes Defendants should be liable for WKI's breach of a work contract with Plaintiffs. [OB 31]  The interpretation of the

terms of an unambiguous agreement is a question of law, making summary

judgment appropriate. *Samson Res. Co. v. Abraxas Wamsutter LP*, 117 Fed. Appx.

641, 644 (10th Cir. 2004)[1].

Plaintiffs propose that the Agreement required WKI to provide fifteen

workers for a specified period, and "[as] long as this was what WKI did, a jury

could find that WKI was acting as [the Cervantes Defendants'] non-servant agent."

[OB 32]  Plaintiffs undercut their own case, because the undisputed fact is that this

is not what WKI did.  Neither WKI nor Plaintiffs ever performed according to the

Agreement.  Neither WKI nor Plaintiffs ever showed up to work for the Cervantes

Defendants during the relevant period.

Moreover, the mere provision in the Agreement that WKI agreed to provide

the Cervantes Defendants with fifteen workers to work for the specified period

does not demonstrate any control by the Cervantes Defendants.  The obligations

were all WKI's.  The Agreement -- whatever its provisions -- was never fulfilled as

---

[1] Plaintiffs' citation [OB 31-32] to *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1334 (5th Cir. 1985) for the proposition that "it is hard to conjecture any circumstance in which the contractor would not be the "agent," for at least some purposes, of a farmer who communicated with him in advance to request that he recruit labor[]" requires examination.  This quoted statement actually arises in the context of the Fifth Circuit refusing to impose vicarious liability and hold the farmer liable for the farm labor contractor's violations of the Farm Labor Contractor Registration Act.  The case is factually inapposite, as the *Beliz* Plaintiffs actually worked for the farmer, the statement is pure dicta, and in the context is contrary to Plaintiffs' position.

to the Cervantes Defendants, whose sole obligation was to hire fifteen workers on November 11, 2011 and provide them with employment for four months.  The workers were never provided, and thus the Agreement failed.

Additionally, it is undisputed that Plaintiffs never saw the Agreement, never knew of the existence of the Agreement of the identity of the Cervantes Defendants, and therefore there is no evidence that Plaintiffs relied upon any alleged manifestation in the Agreement that WKI was acting on behalf of the Cervantes Defendants.  Whether Mr. Cervantes knew the Agreement would be submitted to facilitate WKI's H-2A application [OB 33-34] is immaterial, where the Plaintiffs did not enter into any agreement with WKI based on a representation that WKI was the Cervantes Defendants' agent.  The Agreement simply cannot be read as evidence that the Cervantes Defendants authorized WKI or Mr. Campos to act as their agent, and there is no evidence that this is how the Plaintiffs themselves read the Agreement.

### ii. The testimony of an unconnected third party does not establish agency.

As evidence in support of their claim that the Cervantes Defendants had a "right of control" WKI, Plaintiffs cite the testimony of Defendant Ronald Franzoy, who stated he would retain control over "the contractors in [his] fields," including the right to tell a contractor to remove certain workers whose performance was unsatisfactory.  [Appx. 419]  Mr. Franzoy admitted he only wanted workers from

Mexico. [Appx. 426] Plaintiffs insist that Mr. Franzoy's admissions in these regards is attributable to the Cervantes Defendants. [OB 35-36]

However, there is no evidence to show or suggest that Mr. Franzoy was affiliated with or connected to the Cervantes Defendants in any capacity whatsoever. Mr. Franzoy did not speak for the Cervantes Defendants. Nothing Mr. Franzoy said about his intentions or his farming operation can be imputed to the Cervantes Defendants. Mr. Franzoy's testimony about his operation establishes nothing about the relationship between the Cervantes Defendants and WKI or Mr. Campos.

Further, Mr. Franzoy never testified he had or would retain control over WKI's recruiting process, but over farm workers who might be supplied to Mr. Franzoy's farm by WKI under Mr. Franzoy's separate agreement for outsourcing support with WKI. [Appx. 426-427] Mr. Franzoy's testimony does not support Plaintiffs' argument that WKI was authorized to act as an agent of the Cervantes Defendants.

### iii. A desire for a particular end result does not establish agency.

Plaintiffs rely on Mr. Campos' testimony that he recruited in the "best interest" of the farmers, and tried to "do things the way the farmers wanted." [Appx. 377] The testimony establishes that Mr. Campos sought to identify and recruit workers who would perform well for the farmers. While the intended end

result of the recruitment process was to provide satisfactory workers to the farmers, there is no evidence that the Cervantes Defendants controlled WKI's recruitment process to achieve that goal.  [Appx. 357, 364, 366, 368]  Evidence that WKI intended to recruit workers who would perform satisfactorily for the farmers is not evidence that WKI was the agent of the Cervantes Defendants.

### iv. Adherence to the H-2A program mandates does not establish agency.

Plaintiffs insist that the requirements of the federal H-2A program created some undefined need for control by the Cervantes Defendants. [OB 33-35] According to Plaintiffs, Mr. Cervantes signed the Agreement knowing that WKI would be recruiting under the auspices of the H-2A program, and the H-2A program dictates the manner in which WKI could recruit workers.  Plaintiffs insist this shows that the Cervantes Defendants exercised control by stipulating that recruitment would be done according to the mandates of the federal H-2A program.  Plaintiffs' flawed argument that Mr. Campos' knowing compliance with a federal regulation somehow demonstrates Mr. Cervantes' control sufficient to subject the Cervantes Defendants to vicarious liability to third parties is unsupportable.  WKI's efforts to adhere to the requirements of the H-2A program did not create an agency relationship with the Cervantes Defendants regardless of what Mr. Cervantes knew.

19

### v. There was no implied, suggested, or inferential control indicating agency.

Plaintiffs argue that because WKI knew nothing about actual agricultural labor practices, WKI would lack the capacity to supervise farm workers, thereby making it necessary for the Cervantes Defendants to supervise all the workers who were to be hired by WKI. [OB 35-36] Plaintiffs contend this shows a significant power imbalance from which the Cervantes Defendants control can be inferred.

The syllogism does not follow.  Throughout their Opening Brief, Plaintiffs confuse the work of WKI and the work of the Cervantes Defendants.  WKI purported to be a farm labor recruitment entity, while the Cervantes Defendants run agricultural operations.  Mr. Campos testified that the farmers had no control over the recruitment process. [Appx. 364]  WKI was not allowed to vet the quality or skills of the workers, [Appx. 360] and was required to offer a job to any available U.S. worker who applied. [Appx. 483]  There is no evidence that the Cervantes Defendants could or did have control over what workers WKI would hire as part of the recruitment process.

### vi.  WKI's alleged undercapitalization does not make WKI an agent.

Plaintiffs proposed that WKI was financially dependent on the Cervantes Defendants because WKI had no assets or other customers.  Plaintiffs insisted that WKI had no other work to provide to potential employees, no other way to pay

20

employees beyond its agreements with those farms, and did not itself decide when, what, or where work would be done. Plaintiffs contend that WKI's "economic reality" of dependence supports its agency argument based on a right to control. Even if WKI was entirely financially dependent on the Cervantes Defendants, that does not create an agency relationship absent a showing that the Cervantes Defendants had the right to control the manner in which WKI conducted its business of recruiting workers. The fact that farmers, including the Cervantes Defendants, were WKI's only clients does not vest in the Cervantes Defendants the right to control those recruitment activities.

There is no evidence demonstrating that the Cervantes Defendants had the right to control the manner in which WKI recruited workers. *See San Juan Agr. Water Users*, 2011-NMSC-011, ¶ 16 (holding that there is no agency relationship absent an agreement that the agent will act on the principal's behalf and subject to the principal's control). Plaintiffs failed to present evidence that showed the existence of a genuine issue of material fact that would allow a reasonable jury to conclude that Mr. Campos or WKI acted as authorized agents of a Cervantes Defendant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (explaining that a fact is considered material only if it "might affect the outcome of the suit under the governing law"). The District Court correctly analyzed the

absence of evidence to support the Plaintiffs' contentions and properly entered summary judgment for the Cervantes Defendants.

### II.  The Cervantes Defendants and WKI did not jointly employ the Plaintiffs under the AWPA, and there is no evidence of a "joint employment" agreement between the Cervantes Defendants and WKI or Mr. Campos.

Plaintiffs alleged statutory claims under the Migrant and Seasonal Agricultural Worker Protection Act, 29 U.S.C. §§ 1801-1854 (AWPA or Act). Plaintiffs now challenge the District Court's grant of summary judgment to the Cervantes Defendants on Plaintiffs' claims under 29 U.S.C. § 1822(c).  Plaintiffs insist that the Cervantes Defendants are liable because WKI's and Campos's cancellation of their work contracts violated the Act's provisions relating to working arrangements.[2]  According to Plaintiffs, the "working arrangement" was the clearance order that WKI used to recruit and hire Plaintiffs, and Plaintiffs propose that WKI and the Cervantes Defendants were joint employers, thereby making the Cervantes Defendants liable to Plaintiffs for WKI's alleged violations. No decisions from the Tenth Circuit have been identified that interpret this statutory provision.  The undisputed evidence establishes that the Cervantes Defendants and WKI did not "jointly employ" Plaintiffs.

---

[2] Plaintiffs appear to have abandoned certain claims on appeal, including claims made under 29 U.S.C. § 1811 and 29 U.S.C. §1821, as they make no citation to these provisions in their Opening Brief.

**1. Joint Employment under the AWPA.**

Congress enacted the AWPA in 1983 "to remove the restraints on commerce caused by activities detrimental to migrant and seasonal agricultural workers ... and to assure necessary protections for migrant and seasonal agricultural workers...." 29 U.S.C. § 1801. The Cervantes Defendants demonstrated -- and the District Court agreed -- that they did not "employ" Plaintiffs and were not "joint employers" within the meaning of the AWPA. The AWPA uses the same definition of "employ" has the Fair Labor Standards Act (FLSA). *See* 29 U.S.C. § 203(1); 29 U.S.C. § 1802(2). An entity "employs" a person under the AWPA and the FLSA if it "suffers or permits" the individual to work. *See* 29 U.S.C. § 203(g); 29 C.F.R. § 500.20(h)(1). "An entity 'suffers or permits' an individual to work if, as a matter of economic reality, the individual is dependent on the entity." *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir.1996) (*quoting Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 34, 81 S.Ct. 933 (1961)).

The AWPA's concept of "employ" also includes "the joint employment principles applicable under the [FLSA]." *Aimable v. Long & Scott Farms*, 20 F.3d 434, 438 (11th Cir.), *cert. denied*, 513 U.S. 943, 115 S.Ct. 351 (1994); 29 C.F.R. § 500.20(h)(5). According to the AWPA regulations:

> joint employment means a condition in which a person stands in the relation of an employee to two or more persons at the same time. A determination of whether the employment is to be considered joint employment depends upon all the facts in a particular case. If the facts establish that two or more

23

> persons are completely disassociated with respect to the employment of a
> particular employee, a joint employment situation does not exist.

29 C.F.R. § 500.20(h)(5). The issue in joint employment cases "is not whether the

worker is more economically dependent on the independent contractor or grower,

with the winner avoiding responsibility as an employer." *Antenor*, 88 F.3d at 932.

The AWPA "envisions situations where a single employee may have the necessary

employment relationship with not only one employer but simultaneously such a

relationship with an employer and an independent contractor." *Id.* at 932 (quotation

omitted).

> Courts consider the following regulatory factors as guidance in determining
> economic dependence, and ultimately, whether an employment relationship
> exists: (1) whether the agricultural employer has the power, either alone or
> through the FLC, to direct, control or supervise the workers or the work
> performed (such control may be either direct or indirect, taking into account
> the nature of the work performed and a reasonable degree of contract
> performance oversight and coordination with third parties); (2) whether the
> agricultural employer has the power, either alone or in addition to another
> employer, directly or indirectly, to hire or fire, modify the employment
> conditions, or determine the pay rates or the methods of wage payment for
> the workers; (3) the degree of permanency and duration of the relationship
> of the parties, in the context of the agricultural activity at issue; (4) the
> extent to which the services that the workers rendered are repetitive, rote
> tasks requiring skills that are acquired with relatively little training; (5)
> whether the activities that the workers performed are an integral part of the
> overall business operation of the agricultural employer; (6) whether the work
> is performed on the agricultural employer's premises, rather than on
> premises that another business entity owns or controls; and (7) whether the
> agricultural employer undertakes responsibilities in relation to the workers
> that employers commonly perform, such as preparing and/or making payroll
> records, preparing and/or issuing pay checks, paying FICA taxes, providing
> workers' compensation insurance, providing field sanitation facilities,

housing or transportation, or providing tools and equipment or materials
required for the job (taking into account the amount of the investment).

*Charles v. Burton*, 169 F.3d 1322, 1334 (11th Cir. 1999); *see* 29 C.F.R. §

500.20(h)(5)(iv)(A)-(G); *see also Antenor*, 88 F.3d at 932; *Aimable*, 20 F.3d at

439.

A determination of employment status under the AWPA and the FLSA is a

question of law subject to de novo review. *Charles*, 169 F.3d at 1333. The District

Court below considered all of the enunciated factors, weighting each factor

depending on the light it shed on the Plaintiffs' alleged economic dependence (or

lack thereof) on the Cervantes Defendants, as demonstrated in the summary

judgment record.  [Appx. 968-981]

### a. Power to Direct, Control, or Supervise.

 "[C]ontrol arises when the alleged employer goes beyond general

instructions, such as how many acres to pick in a given day, and begins to assign

specific tasks" or workers. *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d

1200, 1209 (11th Cir. 2003).  An alleged employer engages in active oversight

when it makes such decisions as: (1) whom and how many employees to hire; (2)

whom to assign to specific tasks; (3) when work should begin or end each day; (4)

when a particular field will be harvested or planted; and (5) whether a worker

should be disciplined or retained. *Id.* at 1210; *see also Charles*, 169 F.3d at 1329-

30.

In this case, Plaintiffs never came to the Cervantes Defendants' lands and never provided or offered to provide work to the Cervantes Defendants. There is thus no evidence whatsoever that the Cervantes Defendants took an "overly active role" in overseeing the work performed by the Plaintiffs. *Martinez-Mendoza*, 340 F.3d at 1209-10.

Because the Plaintiffs cannot show that the Cervantes Defendants ever actually directed, controlled, or supervised them, they attempt to rely on the Cervantes Defendants' past employment of a different farm labor contractor, Jesus Maldonado, as a proxy. [OB 41-42] Plaintiffs contend that evidence that Mr. Cervantes exercised control of Maldonado and his work crew demonstrates that Mr. Cervantes would have acted similarly with Plaintiffs.

Evidence concerning Maldonado, a non-party to this case, is not relevant evidence of the relationship between the Cervantes Defendants and WKI. As the District Court noted, Plaintiffs' reliance on *Rodriguez et al. v. SGLC, Inc.*, 2012 WL 5704403 at 7-8, 2:08-cv-01971-MCE-KJN (E.D. Cali. Nov. 15, 2012) [OB 42] [Appx. 973] is misplaced for two reasons. First, *Rodriguez* is not binding authority or precedent in California or the Ninth Circuit, much less in this Circuit.

Second, the farmer in *Rodriguez* had employed the farm labor contractor and the *Rodriguez* plaintiffs under the H-2A program in the past. *Id.* at 7. Their business history was relevant to show how the defendant farmer treated the

plaintiff workers, and the evidence showed the farmer performed quality control over those plaintiffs' work, supervised them, monitored their timesheets, and dictated what rate to pay them. *Id.* at 8.

In contrast, there is no prior history between WKI and the Cervantes Defendants -- much less between Plaintiffs and the Cervantes Defendants -- that could allow such an extrapolation. Evidence of the Cervantes Defendants actions toward Maldonado is not relevant evidence of how the relationship between WKI and the Cervantes Defendants might have looked it WKI had provided workers to the Cervantes Defendants. *Rodriguez* is neither precedential or persuasive.

Because Plaintiffs never actually worked for the Cervantes Defendants, there is no record evidence of control or supervision. There is only Plaintiffs' speculation and conjecture about what control or supervision they believe might have been exercised. *See Bryant*, 848 F.2d at 1067 (opposition to summary judgment cannot rest on speculation, suspicion or hope). The District Court explained it could not "meaningfully evaluate the degree of supervision and control [the Cervantes Defendants] would have exercised over Plaintiffs[,]" a consideration the District Court characterized as "important" and indicated it could not asses. [Appx. 974]

The District Court went on to explain that evaluation of Plaintiffs' attempt to show a dispute on this point was further constrained by the fact that the indicia of

27

control and supervision cited by Plaintiffs implicated "agricultural decisions[.]" Agricultural administration necessarily involves "choosing which fields to pick on which days and dictating what planting specifications should be used." *See Garcia-Celestino v. Ruiz Harvesting, Inc.*, 898 F.3d 1110, 1126 (11th Cir. 2018); *Aimable*, 20 F.3d at 441; *Martinez-Mendoza*, 340 F.3d at 1210-11. While these decisions might indirectly affect how many workers need to be hired, they do not show the type of control necessary to establish this factor, and the District Court properly held that the factor did not weight in Plaintiffs' favor. [Appx. 974-975]

### b. Direct or Indirect Power to Hire or Fire, Modify Employment Conditions, or Determine Rates or Methods of Pay.

To analyze this factor, the District Court looked at whether the Cervantes Defendants could make business decisions that impacted the Plaintiffs' conditions of employment, such as determining hiring or firing decisions, the number of hours to be worked each day, and whether the Cervantes Defendants dictated pay rates and methods. [Appx. 975]  *See Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172, 1179 (11th Cir. 2012).  Plaintiffs insist that Mr. Campos' testimony and Plaintiffs' conjecture about how the Plaintiffs might have been paid based on inferences from Maldonado's testimony created a genuine issue of material fact about this factor. [OB 43]

It is undisputed that the Cervantes Defendants and WKI signed the Agreement indicating the number of workers, the services the workers were to

provide, and the dates during which the work was to take place. But WKI, not the Cervantes Defendants, was responsible for recruiting workers, including Plaintiffs, and for presenting to Plaintiffs the work contract with job descriptions, pay rates, and methods of payment already specified. H-2A regulations dictated that Plaintiffs would be paid hourly, and there is no evidence to support a conclusion that the Cervantes Defendants could have elected to pay hourly as opposed to a piece rate. Even if the Plaintiffs had come to work for the Cervantes Defendants, the fact that Mr. Cervantes would have been able to observe the quality of the Plaintiffs' work and tell WKI about an underperforming worker does not indicate that the Cervantes Defendants had the kind of control that could support a joint employment finding. The District Court correctly found this factor did not weigh in Plaintiffs' favor. [Appx. 976]

### c. Permanency and Duration.

It is undisputed that, had Plaintiffs shown up to the Cervantes Defendants' lands on November 11, 2011 and presented themselves to work in accordance with the Agreement, Plaintiffs would have been hired for a fixed period, November 2011 to March 2012, and their work relationship with the Cervantes Defendants would have been permanent inasmuch as such work is inherently seasonal. *See Charles*, 169 F.3d at 1332 (noting that "[h]arvesting of crops is a seasonal industry … [h]owever temporary the relationship may be … the relationship is permanent

… [if] the migrants work only for [the] defendants during that season.")  However, Plaintiffs never presented to work for the Cervantes Defendants at any time, so there is no record evidence of any actual permanency or duration whatsoever.

Even speculating about what the work relationship might have looked like, there is no evidence in the record to support a conclusion that any of the Plaintiffs would have worked primarily or exclusively for the Cervantes Defendants, as opposed to one of the other area farmers with whom WKI had the same Agreement.  Thus, there is insufficient evidence of any permanency or duration, and the District Court properly weighed this factor against Plaintiffs.  [Appx. 977]

### d. Whether the services rendered were repetitive and rote.

 "The lower the worker's skill level, the lower the value and marketability of his services, and the greater the likelihood of his economic dependence on the person utilizing those services." *Martinez-Mendoza*, 340 F.3d at 1212. Because the Plaintiffs never actually worked for the Cervantes Defendants, the District Court speculated about this factor, and concluded that harvesting crops or processing and packing dry chile for the Cervantes Defendants would "likely [be] a repetitive and rote task." [Appx. 977]  Construing this conjecture in favor of Plaintiffs, the District Court considered this factor to weigh in favor of finding a joint employment. *But see Bryant*, 848 F.2d at 1067 (opposition to summary judgment cannot rest on speculation, suspicion, or hope).

### e. Integral part of the overall business operation.

The District Court observed that "[t]his factor is probative of joint employment because a worker who performs a routine task that is a normal and integral phase of the grower's production is likely to be dependent on the grower's overall production process." [Appx. 977, *quoting Charles*, 169 F.3d at 1332 (internal quotations and citations omitted).]  Again, Plaintiffs never worked for the Cervantes Defendants and the evidence thus consists solely of what Plaintiffs claim might have happened, rather than on what actually occurred.  Assuming that these Plaintiffs might have been among the fifteen workers who actually worked for the Cervantes Defendants, such activities would have been integral to the the Cervantes Defendants' operations.  Speculating about the past possibilities in the light most favorable to Plaintiffs, the District Court apparently felt constrained to view this factor in the Plaintiffs' favor. [Appx. 979]

### f. Work performed on the agricultural employer's premises.

The District Court noted that the Cervantes Defendants conceded that, if Plaintiffs had presented themselves for work, the work would have been performed on lands owned by the Cervantes Defendants.  [Appx. 958; 979]  Here, though, the District Court noted there was no evidence that the Plaintiffs knew who the Cervantes Defendants were or that the Plaintiffs therefore believed they would be working for the Cervantes Defendants.  The District Court noted the analysis in

*Martinez-Mendoza*, suggesting that workers who are unaware of the putative employer's identity are not jointly employed by that employer. 340 F.3d at 1214. Where a farm labor contractor hires and transfers workers to work on the lands of different landowners, the plaintiffs never know on whose land they worked, and did not rely upon a putative employer's business a source of income. *Id.* The plaintiffs in *Martinez-Mendoza* actually worked on that defendant's land, so that court found this factor in plaintiffs' favor, but only "slightly." *Id.*

Here, the District Court noted that Plaintiffs never knew whether they might have worked for the Cervantes Defendants or on their lands, and Plaintiffs presented no record evidence that Plaintiffs would have worked primarily or exclusively with the Cervantes Defendants as opposed to one of the other farmers with whom WKI had labor contracts. The District Court thus held this factor weighed "only slightly" in Plaintiffs' favor. [Appx. 979]

### g. Responsibilities ordinarily performed by employers.

"The final factor examines whether [the putative employer] undertook responsibilities for workers often undertaken by employers, such as (1) preparing and/or making payroll records, (2) preparing and/or issuing pay checks, (3) paying FICA taxes, (4) providing workers' compensation insurance, (5) providing field sanitation facilities, housing or transportation, or (6) providing tools and equipment or materials required for the job." *Martinez-Mendoza*, 340 F.3d at 1214. "The

provision of such services "is both an objective manifestation of employer status and strong evidence of the workers' economic dependence[]." *Id.* The court in *Martinez-Mendoza* found that this factor did not suggest joint employment when the putative employer "provided none of these services[.]" *Id.*

Plaintiffs argue [OB -45] that a provision in the Agreement "proves that [the Cervantes Defendants] undertook responsibilities ordinarily performed by employers" based on Plaintiffs' reading of 20 C.F.R. § 655.135(k), which is nowhere mentioned in the Agreement, and which reads:

> (k) Contracts with third parties comply with prohibitions. The employer has contractually forbidden any foreign labor contractor or recruiter (or any agent of such foreign labor contractor or recruiter) whom the employer engages, either directly or indirectly, in international recruitment of H–2A workers to seek or receive payments or other compensation from prospective employees. This documentation is to be made available upon request by the CO or another Federal party.

Plaintiffs' argument in this regard is unclear, and in any event, the provision does not apply to Plaintiffs, who were all U.S. citizens or legal residents.

Moreover, as has been repeatedly noted, Plaintiffs submitted no evidence that the Cervantes Defendants undertook responsibilities commonly performed by employers. Certainly they never did so with regard to Plaintiffs, who never worked for the Cervantes Defendants, and neither to other agricultural workers about whose employment circumstances the Plaintiffs invited the imputation of

inferences based on speculation, conjecture, and surmise.  The District Court

observed:

> There is no evidence that the Cervantes Defendants would have managed
> Plaintiffs' payroll, provide workers' compensation insurance, provide field
> sanitation facilities, or provide house or transportation. The clearance order
> identified WKI alone as the employer. According to the clearance order,
> WKI was to provide workers three meals a day at specified cost, housing,
> transportation, and minimum work hours. WKI was responsible for
> deducting FICA and state taxes. The clearance order offered unemployment
> insurance, workers' compensation insurance, and tools at no charge. There is
> simply no indication in the record that the Cervantes Defendants were
> responsible for any of these services. This factor does not weigh in
> Plaintiffs' favor.

[Appx. 980]

### h. Weighing of Factors

"Whether an entity qualifies as a joint employer is a question of law" for the

court to decide. *Garcia-Celestino*, 843 F.3d at n.12 & 1293; *Utah Power & Light*

*Co. v. Fed. Ins. Co.*, 983 F.2d 1549, 1553 (10th Cir. 1993) (finding that "a question

of law [is] to be determined by the court and may be decided on summary

judgment). "[T]he ultimate question to be determined" by the court "is the

economic reality – whether the worker is so economically dependent upon the

agricultural employer/association as to be considered its employee." 29 C.F.R.

§500.20(h)(5)(iii).

Of the seven regulatory factors, and viewing the summary judgment record

in the light most favorable to Plaintiffs, only three factors were found to weigh in

Plaintiffs' favor (and one of those only slightly.) In analyzing whether the

Cervantes Defendants jointly employed Plaintiffs, the answer to economic reality

question – whether Plaintiffs are so economically dependent upon the Cervantes

Defendants as to be considered its employees – is clearly "no."  There is no

evidence that Plaintiffs were economically dependent upon the Cervantes

Defendants.  There is no evidence that the Cervantes Defendants directly impacted

Plaintiffs' employment, and only speculation that they might have done so if the

Plaintiffs had actually worked for the Cervantes Defendants.  29 C.F.R. §

500.20(h)(5)(iii).  The District Court properly granted summary judgment and

should be affirmed.

### III.  The District Court specifically addressed the absence of evidence to support the Plaintiffs' claims for civil conspiracy, and Plaintiffs fail to support claims for abandonment, and damages.

### 1. Plaintiffs' Conspiracy Claim.

Plaintiffs complain that the District Court failed to consider any relevant

evidence before granting summary judgment on their civil conspiracy claims.  [OB

45-46]  [*But see* Appx. 720-722]  Plaintiffs insist that Mr. Campos's defrauding of

Plaintiffs about the existence of jobs is attributable to the Cervantes Defendants in

a coconspirator capacity. [OB 47-48] Plaintiffs also allege that the Cervantes

Defendants and WKI conspired to evade the H-2A program's requirements that

U.S. workers be given employment priority over foreign workers. Plaintiffs'

theory, which does not amount to evidence, is that the Cervantes Defendants had

no rational business reason to partner with WKI, an untested, undercapitalized

business, unless the reward was to acquire foreign laborers. [OB 47-48] Plaintiffs

insist that, WKI's pledge in its H-2A application to hire U.S. workers over foreign

workers notwithstanding, Mr. Cervantes' had "no legitimate business purpose in

joining WKI's application." [OB 47]  Plaintiffs obviously want a jury to be

permitted to speculate that the Cervantes Defendants had no intention of hiring the

workers WKI provided unless they came from Mexico.  [OB 48]  Plaintiffs have

no evidence to support this scurrilous accusation beyond their conspiracy theory.

[OB 46-48]

To prevail on a claim for civil conspiracy, Plaintiffs had to show: (1) that a

conspiracy between Mr. Campos and Mr. Cervantes existed, (2) that specific

wrongful acts were carried out by Mr. Campos and Mr. Cervantes pursuant to the

conspiracy, and (3) that Plaintiffs were damaged as a result of such acts. *Vigil v.*

*Pub. Serv. Co. of New Mexico*, 2004-NMCA-085, ¶ 20, 94 P.3d 813, 817, *citing*

*Ettenson v. Burke*, 2001–NMCA–003, ¶ 12, 17 P.3d 440. "A civil conspiracy by

itself is not actionable, nor does it provide an independent basis for liability unless

a civil action in damages would lie against one of the conspirators." *Cain v.*

*Champion Window Co. of Albuquerque, LLC*, 2007-NMCA-085, ¶ 28, 164 P.3d

90, 98. A civil conspiracy must actually involve an independent, unlawful act that

causes "cannot recover on a claim for civil conspiracy unless [the plaintiff] can recover against at least one of the conspirators for a specific wrongful act beyond the conspiracy itself." *Ettenson*, 2001–NMCA–003, ¶ 12. "[A] conspiracy claim fails as a matter of law when no actionable civil case exists against the defendants." *Vigil*, 2004-NMCA-085, ¶ 20.

Plaintiffs presented no document or evidence of any unlawful communications of a conspiratorial nature were exchanged between Mr. Campos and Mr. Cervantes. Plaintiffs alleged, but adduced no evidence of any intent to avoid or evade requirements of federal laws, the H-2A requirements, or the AWPA by either Mr. Campos or Mr. Cervantes. Mr. Campos' alleged fraud cannot be imputed to Mr. Cervantes simply because such imputation conforms to Plaintiffs' theory. Plaintiffs seem actually to believe it would be proper to ask a jury to speculate and infer from the alleged statements of other farmers [OB 48] and from the fact that the Cervantes Defendants "found all U.S. workers [] needed by paying only minimum wage" [OB 48] that the Cervantes Defendants had no never intended to hire workers from WKI. No independent illegal act can be inferred from Mr. Cervantes lawful business decision to attempt to engage the services of WKI. Plaintiffs' conspiracy theory is unsupported.

The District Court properly found there was no genuine issue of material fact in dispute concerning the Cervantes Defendants' alleged conspiring with WKI

to evade the requirements of the H-2A visa program. There is no evidence to support a finding that the Cervantes Defendants communicated, assisted, or participated in WKI's H-2A application filing or in the alleged problems arising out of WKI's failure to provide work to Plaintiffs.

Because no genuine issues of material fact supported their breach of contract, AWPA, and common law claims, Plaintiffs civil conspiracy claims failed as a matter of law.  Plaintiffs never demonstrated the existence of facts that could constitute evidence of a conspiracy between Mr. Cervantes and WKI. Plaintiffs on appeal simply repeat allegations regarding other farmers, and ask the Court to infer something nefarious from evidence that Mr. Cervantes expressed interest in hiring workers under the H-2A program, but Plaintiffs do not and have never offered anything more than accusations and speculation in their efforts to associate the alleged statements of others with the Cervantes Defendants.  Summary judgment was properly granted on Plaintiffs' conspiracy claims.

## 2.  Plaintiffs' claims for "Abandonment" and Damages.

Plaintiffs Opening Brief makes no effort to present argument or authority in support of their contention that summary judgment was improperly granted as to "abandonment" and damages.  Plaintiffs' "abandonment" claim is not self-evident and their citation to their own response [OB 48 *citing* Appx. 655] is unhelpful.

As to Plaintiffs' claim for damages, it seems axiomatic that damages are not a "stand alone" claim or cause of action.  Plaintiffs must first establish some cognizable basis for liability before they are entitled to damages.  Having utterly failed to substantiate any claim or show any factual basis for any of their claims, they are not entitled to argue about or request consideration of alleged damages.

## CONCLUSION

For the foregoing reasons, the District Court's orders granting summary judgment to the Cervantes Defendants should be affirmed in all respects.

## ORAL ARGUMENT REQUEST

The Cervantes Defendants suggest that the Court may benefit from oral argument.

Respectfully submitted,

CERVANTES LAW FIRM, P.C.

*/s/ Joseph Cervantes*

Joseph Cervantes
2610 South Espina
Las Cruces, NM  88001
(575) 526-5600
joseph@cervanteslawnm.com

and

*/s/ L. Helen Bennett*

L. Helen Bennett, P.C.
PO Box 4305
Albuquerque, NM  87196-4305
(505) 321-1461
hbennett@swcp.com

*Attorneys for Cervantes Defendants:*

39

*Cervantes Agribusiness and*
*Cervantes Enterprises, Inc.*

## CERTIFICATES OF SERVICE AND
## DIGITAL SUBMISSION COMPLIANCE

### CERTIFICATE OF DIGITAL SUBMISSION

In accord with the Court's CM/ECF User's Manual, I hereby certify that all required privacy redactions have been made from the foregoing Brief.  In addition, I certify that the hard copies of this pleading that may be required to be submitted to the court are exact copies of the ECF filing, and the ECF submission has been scanned for viruses with the most recent version of a commercial virus scanning program—specifically Norton Antivirus, Version 360, Updated November 5, 2019, and, according to the program, is free of viruses.

*/s/ Joseph Cervantes*
Attorney for Appellees

### CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), Counsel for Appellees certifies that this document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B), because, excluding the parts of the document exempted by Rule 32(f) and 10th Cir. R. 32(B), this document contains 9,439 words. Counsel certifies that this document complies with the typeface requirements of Rule 32(a)(5) and 10th Cir. R. 32(A), and the type-style requirements of Rule 32(a)(6) -- this document has been prepared in a proportionally spaced typeface using Times New Roman in 14-point font.

*/s/ Joseph Cervantes*
Attorney for Appellees

### CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2019, a true, complete, and correct copy of the foregoing Brief was served on the following counsel for all Appellees by digital submission via email and the Court's CM/ECF program: Jerome Wesevich, Christopher Benoit, Texas RioGrande Legal Aid, 1331 Texas Avenue, El Paso, Texas 79901 jwesevich@trla.org; cbenoit@trla.org.

*/s/ Joseph Cervantes*
Attorney for Appellees