No. 19-2091

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

_____

ESTEBAN ALFARO-HUITRON, *et al.*,
Appellants

v.

CERVANTES AGRIBUSINESS, *et al.*,
Appellees

_____

Appeal from the United States District Court
For the District of New Mexico, Civil No. 2:15-210
Before the Honorable Judith C. Herrera

_____

## REPLY BRIEF FOR ALL APPELLANTS—
## ESTEBAN ALFARO-HUITRON, ELEAZAR GARCIA-MATA, JOSE ANTONIO GARCIA-MATA, JUAN GUZMAN, ENRIQUE ROJAS-TORRES, LAZARO ROJAS-TORRES, RAUL JASSO-CERDA, TRINIDAD SANTOYO-GARCIA, AND BERTHA MARTINEZ

_____

Jerome Wesevich
Chris Benoit
TEXAS RIOGRANDE LEGAL AID
1331 Texas Avenue
El Paso, Texas  79901
(915) 585-5120
*Attorneys for Appellants*

**Oral Argument Requested**
Filed December 5, 2019

# TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ........................................................................ ii

GLOSSARY ............................................................................................... v

SUMMARY OF REPLY ............................................................................ 1

REPLY ARGUMENT ................................................................................ 4

    I.   CABEI repeats the district court's error of conflating the tests
        for agency and employment. ............................................................ 4

    II.  CABEI misreads the summary judgment record of CABEI's
        control over WKI ............................................................................ 6

          1.  The CABEI-WKI Relationship. ....................................... 7

          2.  WKI's Breach. ................................................................. 9

          3.  Farmworker Ignorance of CABEI. .................................. 13

          4.  Ronald Franzoy's Testimony. ......................................... 14

          5.  Choice Between U.S. and Mexican Workers. .................. 15

          6.  H-2A Application Process. ............................................... 16

    III.  CABEI applies the wrong standard of review and ignores record
         evidence of joint employment ................................................... 17

    IV.  CABEI does not dispute that the district court failed to explain its
         rulings as to civil conspiracy, abandonment, and damages as required
         by Rule 56(a).. ............................................................................. 21

CONCLUSION ........................................................................................ 25

CERTIFICATES OF SERVICE/DIGITAL SUBMISSION/COMPLIANCE ........ 26

# TABLE OF AUTHORITIES

Page(s)

Cases

*Bankers Life Ins. Co. of Neb. v. Scurlock Oil Co.*,
  447 F.2d 997 (5th Cir. 1971) ..................................................................................13

*Bekkem v. Wilkie*,
  915 F.3d 1258 (10th Cir. 2019) ..........................................................................10

*Ettenson v. Burke*,
  2001-NMCA-003, 130 N.M. 67, 17 P.3d 440.................................... 4, 5, 6, 22, 23

*Hamberg v. Sandia Corp.*,
  2007-NMCA-078, 142 N.M. 72, 162 P.3d 909.......................................................9

*Haywood v. Barnes*,
  109 F.R.D. 568 (E.D.N.C. 1986) ..........................................................................19

*King v. United States*,
  379 U.S. 329 (1964) .................................................................................................7

*Landry v. Swire Oilfield Servs., L.L.C.*,
  323 F.R.D. 360 (D.N.M. 2018) ...............................................................................7

*Murray v. City of Tahlequah, Okl.*,
  312 F.3d 1196 (10th Cir. 2002).............................................................................12

*Nader v. Democratic Nat'l Committee*,
  567 F.3d 692 (D.C. Cir. 2009)...............................................................................23

*New Mexico Military Inst. v. NMMI Alumni Ass'n, Inc.*, No. A-1-CA-35621,
  2018 WL 5262677 ¶ (N.M. Ct. App. Oct. 22, 2018) ............................................12

*Ortiz v. Norton*,
    254 F.3d 889 (10th Cir. 2001) ................................................................8

*Pedroza v. Lomas Auto Mall, Inc*.,
    No. 07-cv-591, 2009 WL 1325460 (D.N.M. Jan. 21, 2009) ...............................23

*Quigley v. Rosenthal,*
    327 F.3d 1044 (10th Cir. 2003) .............................................................6

*Richards v. Attorneys' Title Guar. Fund, Inc*.,
    866 F.2d 1570 (10th Cir. 1989) .............................................................12

*W. Elec. Co. v. New Mexico Bureau of Revenue*,
    1976-NMCA-047, 90 N.M. 164, 561 P.2d 26 .........................................7

<u>Statutes</u>

8 U.S.C. § 1188(a) .............................................................................15

29 U.S.C. § 1801 .................................................................................2

29 U.S.C. § 1821(a) .........................................................................2, 13

<u>Regulations</u>

20 C.F.R. Part 655 ............................................................................17

20 C.F.R. § 655.122(q) .....................................................................13

20 C.F.R. § 655.132(b)(4) ................................................................16

20 C.F.R. § 655.135(k) .....................................................................17

20 C.F.R. §§ 655.100 and 655.120 ....................................................15

<u>Other Authorities</u>

Restatement (Second) of Agency § 51 ....................................................................17

Restatement (Second) of Agency § 142 ..................................................................4

Restatement (Second) of Agency § 220 ...............................................................5, 6

Restatement (Second) of Agency § 261 ................................................................13

Restatement (Second) of Agency §§ 50 ..............................................................9, 12

Restatement (Second) of Agency §§ 257 .............................................................9, 12

Restatement (Third) of Agency § 1.01 .................................................................5

Restatement (Third) of Agency § 1.04(4)...........................................................2, 14

# GLOSSARY

| | |
|---|---|
| AEWR | Adverse Effect Wage Rate Defined in 20 C.F.R. § 655.100(c) |
| APX | Appendix filed by Appellants Oct. 4, 2019, 4 Volumes, pp. 001-984 |
| AWPA | Agricultural Worker Protection Act, 29 U.S.C. § 1801, *et seq.* |
| CAB | Appellee Cervantes Agribusiness |
| CEI | Appellee Cervantes Enterprises, Inc. |
| CABEI | CAB and CEI |
| DOL | U.S. Department of Labor |
| FLSA | Fair Labor Standards Act |
| H-2A | Foreign Guestworker Program Under 8 U.S.C. § 1101(a)(15)(H)(ii)(a) |
| H-2ALC | H-2A Labor Contractor Defined in 20 C.F.R. §§ 655.103(b) and 132 |
| USCIS | U.S. Citizen and Immigration Services |
| WKI | WKI Outsourcing Solutions, Inc. |

## SUMMARY OF REPLY

In their opening brief, the Appellant Farmworkers cite evidence and authority that show four independent grounds for reversing the district court's summary judgments.  The Answer Brief filed by Appellees Cervantes Agribusiness and Cervantes Enterprises, Inc. ("CABEI Answer Br.") does not account for this evidence and authority.  Instead it consists of unsupported and irrelevant argument.

First, the Farmworkers cite New Mexico law showing that independent contractors can bind principals to contracts, and render principals liable for their misrepresentations, even if the principals lack the right to control the manner in which the independent contractors perform their assigned tasks.  Farmworker Br. at 24-29.[1]  CABEI labels this argument a "gambit," Answer Br. at 12, but declines to offer any authority, evidence, or reason whatsoever to refute it.  The Farmworkers stand on their argument as presented in their opening brief.

Second, the Farmworkers cite evidence showing a genuine dispute as to whether CABEI had a sufficient right to control its labor recruiter, WKI Outsourcing Solutions, Inc. ("WKI"), such that an agency relationship existed between CABEI and WKI.  Farmworker Br. at 29-37 (including the CABEI-WKI agreement, WKI's admission that it practically needed to, and did, act in CABEI's best interest, the testimony of an identically situated grower, and the fact that

---

[1] All cites to briefs are to the black page numbers printed in the bottom margin.

1

CABEI and WKI agreed that recruiting would be done as necessary to satisfy H-2A recruiting regulations).  Without accounting for this evidence, CABEI responds by asserting that WKI alone breached all contracts at issue.  Answer Br. at 1-12 and 16-17.  But: (a) the record shows a fact dispute regarding CABEI's involvement in WKI's breaches of contract; and (b) no authority indicates that an agent's breach is a defense to the principal's liability for its agents' contracts and misrepresentations.  CABEI also repeatedly argues that the Farmworkers had no notice of CABEI's existence at any relevant time.  But: (a) the constructive notice supplied by 29 U.S.C. § 1821(a) suffices under RESTATEMENT (THIRD) OF AGENCY § 1.04(4); and (b) as described by RESTATEMENT (THIRD) OF AGENCY §§ 1.04(2) and 6.02, notice of the principal's identity is not required for an agency relationship to exist.  CABEI cites no contrary authority.  CABEI has not met its burden of showing that any record evidence or authority entitles it to judgment as a matter of law on whether CABEI exercised sufficient control over WKI to support a finding of agency.

Third, the Farmworkers cite record evidence showing a genuine dispute as to whether a joint-employment relationship existed between CABEI and WKI. Farmworker Br. 37-45.  The parties agree on the seven factors used to decide joint employment under the Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1801, *et seq.*  *Compare* Farmworker Br. at 38-41 *with* CABEI Answer Br. at 23-

25.  But CABEI repeats the district court's plain error by weighing the joint employment factors rather than answering the only proper question on summary judgment - whether the record shows a triable issue as to one or more factors.  To claim that the record precludes any finding of joint employment, CABEI simply ignores record evidence cited by the Farmworkers, including for example, the undisputed evidence that WKI and its staff had no knowledge of farming and no ability to supervise farmworkers.  APX 353-54, 363, 368, 381, and 399.  The reasonable, and indeed only, fair inference from this evidence is that CABEI had no choice but to supervise all workers supplied by WKI.  Thus, the district court erred in construing this cardinal indication of joint employment against the Farmworkers.  Farmworker Br. at 41-43.  Whether the seven factors are examined individually or collectively, the record contains sufficient evidence of joint employment to require a trial.

Fourth, the Farmworkers explain how the very New Mexico authorities relied upon by the district court conclusively establish that CABEI can be liable for civil conspiracy if WKI's Jaime Campos defrauded the Farmworkers, even if CABEI itself did not directly defraud the Farmworkers.  Farmworker Br. at 46-48.  In response, CABEI argues that a civil conspiracy claim can only exist if "wrongful acts were carried out by Mr. Campos *and Mr. Cervantes* pursuant to the conspiracy . . . ."  CABEI Answer Br. at 36.  This is flatly inconsistent with New

Mexico law.  *See Ettenson v. Burke*, 2001-NMCA-003, ¶ 23, 130 N.M. 67, 17 P.3d 440.  Because Mr. Campos's fraud alone can support a conspiracy claim against CABEI, summary judgment on conspiracy is inappropriate.

The district court's two orders granting summary judgment to CABEI should be reversed for any and all of these reasons.

## REPLY ARGUMENT

### I. CABEI repeats the district court's error of conflating the tests for agency and employment.

Under New Mexico law, independent contractors can bind their principals to contracts even if the principals have no right to control the manner in which these "non-servant agents" perform their assigned duties.  Farmworker Br. at 24-29 (collecting authority); *see also id.* at 26 n.6 (same in other states); *see also* Restatement (Second) of Agency § 142 cmt. a ("Although servants have greater powers to subject their principals to *tort* liability than have agents who are not servants, the powers of servants to bind their principals by *contracts* . . . are not different from those of agents who are not servants.") (emphasis added),

CABEI agrees that "an independent contractor . . . may or may not be an agent."  CABEI Answer Br. at 12 (quotation omitted).  But then, inconsistent with this statement, CABEI argues the opposite, that the test for *distinguishing* employees (also called servants) from independent contractors should be applied to decide whether an agency relationship existed between CABEI and WKI.  *See id.*

4

at 13-15 (discussing RESTATEMENT (SECOND) OF AGENCY § 220, the test for distinguishing between employees and independent contractors). CABEI relies only upon the § 220 test to repeatedly argue that because CABEI did not control the "manner in which WKI could recruit workers," no agency relationship could exist between CABEI and WKI. *Id.* at 19; *accord id.* at 13-15 and 21. Thus, CABEI improperly conflates the tests for agency and employee status, precisely as did the district court.

Nothing in CABEI's Answer Brief responds to the Farmworkers' authority showing that the district court's summary judgment is premised on its improper conflation of the test for employee status with the test for agency status, and the district court's judgment should be reversed for this reason alone. The Farmworkers therefore stand on the unrefuted argument and authorities that they present at pages 24-29 of their opening brief. Those materials describe two forms of agency that have distinct requirements as to control:[2] (a) where the principal has a right to control the manner in which the agent carries out the agency, the agent is an employee who can subject the principal to liability for the agent's physical torts;

---

[2] An agency relationship exists when two persons agree that one will act on the other's behalf and subject to the other's control. RESTATEMENT (THIRD) OF AGENCY § 1.01 and cmt. c. Here, the record shows that CABEI and WKI agreed that WKI would "recruit workers on [CABEI's] behalf," APX 474 (Agreement), so control alone determines whether an agency relationship existed between CABEI and WKI.

and (b) where the principal only has a right to control the result to be accomplished by the agent, the agent is an independent contractor who can bind the principal to those contracts that the principal authorized the agent to make, and who can subject the principal to liability for the agent's misrepresentations. *Id.*; *accord Quigley v. Rosenthal,* 327 F.3d 1044, 1064 & n.10 (10th Cir. 2003) (independent contractors can be agents even if they do not control "the manner of work performed"); RESTATEMENT (SECOND) OF AGENCY § 220 cmt. e (an "agent who is not a servant" can exist).

## II.   CABEI misreads the summary judgment record of CABEI's control over WKI.

The Farmworkers contend that the CABEI-WKI Agreement itself, APX 474, shows that CABEI retained a sufficient right of control over the results of WKI's recruiting to prove a genuine dispute over whether an agency relationship existed, and this proof of control is only corroborated by the record in numerous respects. Farmworker Br. at 29-31 (authority) and 31-37 (evidence).  CABEI responds by taking the extreme position that "the undisputed facts showed no control by the Cervantes Defendants over any aspect of WKI or WKI's recruitment efforts as a farm labor contractor."  CABEI Answer Br. at 13-14.  Examination of CABEI's list of arguments shows this assertion to be baseless.

*1. The CABEI-WKI Relationship.*  CABEI argues that the facts and circumstances surrounding its relationship to WKI do not indicate the control necessary for the relationship to be one of agency.  CABEI Answer Br. at 18-21.

"The presence of an agency relationship must be determined from all the facts and circumstances of the case."  *W. Elec. Co. v. New Mexico Bureau of Revenue*, 1976-NMCA-047, ¶ 12, 90 N.M. 164, 167, 561 P.2d 26, 29.  One party's capacity to control another "depends, not on the title of his position or the mode of his appointment, but, *in practical terms*, upon the degree of control he is in a position to assert over the [other's actions]."  *King v. United States*, 379 U.S. 329, 337 (1964) (emphasis added); *accord Landry v. Swire Oilfield Servs., L.L.C.*, 323 F.R.D. 360, 397 (D.N.M. 2018) (control includes "the practical ability" to secure action from another person).

The relationship between CABEI and WKI was one of utter subservience so that CABEI could practically control WKI in any way that CABEI chose.  CABEI refutes none of the ways in which the Farmworkers show this to be so.

Foremost, Jamie Campos testified that he would "have followed whatever directions" CABEI gave him, APX 361 (Campos Depo. at 75:13 to 77:8), that he told all farmers that he would "get things done the way that the farmers wanted things to be done," APX 375 (Campos Depo. 60:1-5), and that he would have followed directions as to where to recruit workers had a direction been given, APX

361 (Campos Depo. at 76:12-24). CABEI does not refute any of this testimony. Nor does CABEI ever attempt to dispute the Farmworkers' argument that the district court erred by choosing which part of Mr. Campos's testimony to credit, by taking Mr. Campos's testimony out of context, and by failing to draw all reasonable inferences from the testimony in the Farmworkers' favor. *See* Farmworker Br. at 34 n.10 (describing district court's improper choice from contradictory testimony); *Ortiz v. Norton*, 254 F.3d 889, 897 (10th Cir. 2001) (reversing summary judgment that was based on a choice from contradictory testimony). Instead, CABEI characterizes Mr. Campos's testimony as only showing that CABEI and WKI both desired the same "end result." CABEI Answer Br. at 18-19. This characterization is consistent with any agency relationship, and it does nothing to undermine the fair inference from the cited testimony, which is that WKI acted subject to CABEI's control.

Mr. Campos's testimony is corroborated by the circumstances surrounding the CABEI-WKI relationship, none of which CABEI refutes. *See* Farmworker Br. at 10-11 and 35 (citing record). CABEI acknowledges that "WKI knew nothing about actual agricultural practices" and allows that WKI "was entirely financially dependent on the Cervantes Defendants," but argues that WKI needed no such knowledge or resources to recruit workers. CABEI Answer Br. at 20-21. This argument defies logic. CABEI is undisputedly a sophisticated, long-established,

and well capitalized business. Farmworker Br. at 13. CABEI always had access to all of the farm labor that it needed to operate. APX 459 (Maldonado Depo. at 45:13-19); APX 791 (Maldonado Depo. at 14:15-24). It would be unreasonable, even reckless, for CABEI to cede control over any aspect of its farm labor practices to an entity with no knowledge or experience in these matters, such as WKI. The only reasonable inference from the circumstances surrounding the relationship between CABEI and WKI was that CABEI retained the practical right to control any aspect of WKI's operations that CABEI chose. The fact that CABEI did not actually exercise control is irrelevant. *See Hamberg v. Sandia Corp.*, 2007-NMCA-078, ¶ 31, 142 N.M. 72, 81, 162 P.3d 909, 918, *aff'd*, 2008-NMSC-015, ¶ 31, 143 N.M. 601, 179 P.3d 1209.

    *2. WKI's Breach*. CABEI argues that WKI alone is responsible for any damages suffered by the Farmworkers because WKI alone breached its contract with CABEI (APX 474) because WKI did not timely supply the laborers described in that contract. CABEI Answer Br. at 10-12 and 16-17. But: (a) the record shows a genuine dispute as to whether and why WKI terminated its labor contracts; and (b) even if WKI breached its contract with CABEI, no cited authority indicates that an agent's breach absolves the principal of contract liability to third persons under Restatement (Second) of Agency §§ 50 and 140, or liability for the agent's misrepresentations under Restatement (Second) of Agency §§ 257 and 261.

As for the dispute of fact, WKI's Jaime Campos testified that he did everything "humanly possible" to preserve the agreement and supply workers to CABEI. APX 375 (Campos Depo. at 60:12-14). Mr. Campos terminated his labor agreements only after discussing the matter with CABEI, and obtaining CABEI's assent to doing so. APX 374 (Campos Depo. at 56:1 to 57:21); APX 594 (Campos Answer). CABEI repeatedly claims that WKI had no further contact with CABEI after these parties executed their contract on September 10, 2011. *See, e.g.,* CABEI Answer Br. at 11-12; *but see* Farmworker Br. at 15-18 (citing record evidence of further contact). This would require a factfinder to accept a patently implausible sequence of events: that after CABEI contracted for labor with WKI on September 10, CABEI did nothing to follow up on this contract, pretended that no contract had ever existed, and hired replacement workers without ever checking with WKI. *See Bekkem v. Wilkie*, 915 F.3d 1258, 1268 (10th Cir. 2019) (To survive summary judgment, "Plaintiff must show that the proffered reasons [for challenged actions] 'were so incoherent, weak, inconsistent, or contradictory that a rational factfinder could conclude the reasons were unworthy of belief.'") (citations and quotations omitted).

There is also a genuine dispute as to why the labor agreements were terminated. Mr. Campos swore to the federal government that this was due to drought. APX 522 (Letter). But Mr. Franzoy testified that the drought claim was a

lie, and the real reason was that WKI could not obtain the Mexican workers that he wanted. APX 427 (Franzoy Depo. at 89:6-10). Consistent with Mr. Franzoy's view of the facts, CABEI actually hired U.S. workers to perform the labor that was supposedly obviated by drought. APX 454, 459 (Maldonado Depo. at 20:25 to 23:5 and 45:17-19); APX 454, 458 (Maldonado Depo. at 20:8-13, 36:8-17, and 37:17-19). Now, CABEI offers this Court a third explanation for why it claims that Mr. Campos cancelled the labor contracts: "WKI was ultimately unsuccessful in obtaining workers and eventually abandoned the effort." CABEI Answer Br. at 7-8. This is disputed for the same reasons stated above. CABEI's new argument only adds to the dispute of fact already shown by the record.[3]

Finally, as a matter of law, CABEI cites no authority to support its repeated claim that it could incur no duty or liability to anyone until WKI actually supplied workers to it. *See* CABEI Answer Br. at 11 (Unsupported: "[o]nly after WKI supplied farm workers did the Cervantes Defendants have any duty . . . ."); *id.* at 16 (Unsupported: "the Agreement required WKI to provide fifteen workers[, and no agency relationship can exist because neither] WKI nor Plaintiffs ever performed according to the Agreement."); *id.* at 17 (Unsupported: "the Cervantes

---

[3] WKI plainly succeeded in obtaining *U.S.* workers including the Farmworkers. *See* Farmworker Br. at 14-16 (citing record). To the extent that WKI was "ultimately unsuccessful," it was only unsuccessful in getting permission to hire the *Mexican* workers sought by the growers, as alleged by the Farmworkers.

11

Defendants, whose sole obligation was to hire fifteen workers on November 11, 2011 and provide them with employment for four months[, never had to begin performance because the] workers were never provided, and thus the Agreement failed."). CABEI's failure to supply authority means that it has not met its summary judgment burden. *See Murray v. City of Tahlequah, Okl.*, 312 F.3d 1196, 1200 (10th Cir. 2002) (even on undisputed facts, the party moving for summary judgment still bears the burden of showing that the facts entitle it to judgment as a matter of law).

A principal's duty and potential liability to third parties arises at the time that the principal authorizes the agent to act on the principal's behalf, and remains at least through the time that the principal or agent terminate this relationship. *See New Mexico Military Inst. v. NMMI Alumni Ass'n, Inc.*, No. A-1-CA-35621, 2018 WL 5262677, at *7-8 ¶¶ 27-32 (N.M. Ct. App. Oct. 22, 2018). Here, the record shows that CABEI authorized WKI to recruit workers on its behalf on September 10, 2011, APX 474 (Agreement), and the record contains no evidence that CABEI and WKI terminated their relationship prior to the time when WKI hired the Farmworkers. Thus, under RESTATEMENT (SECOND) OF AGENCY §§ 50, 140, 257, and 261, any WKI breach of its agreement with CABEI is immaterial to CABEI's liability to the Farmworkers. *See Richards v. Attorneys' Title Guar. Fund, Inc.*, 866 F.2d 1570, 1574 (10th Cir. 1989) ("The principal's liability under § 261 is not

based on the nature of the agent's act . . . but rather is based upon the principal placing the agent in the position to interact with the third party who is harmed."); *Bankers Life Ins. Co. of Neb. v. Scurlock Oil Co*., 447 F.2d 997, 1007 (5th Cir. 1971) ("[W]hen a principal puts his agent in a position of responsibility and gives that agent certain powers to act in the principal's behalf, third parties are entitled to rely on an agent's good faith performance of his apparent powers.  And if the agent uses those powers in a deceitful manner, it is not the innocent third party who should suffer, but the principal who inflicted the deceitful agent upon the public in the first place."); RESTATEMENT (SECOND) OF AGENCY § 261 cmt. a ("The principal is subject to liability under [§ 261] although he is entirely innocent, has received no benefit from the transaction, and . . . acted solely for his own purposes.").

*3.  Farmworker Ignorance of CABEI*.  CABEI argues that WKI could not have been its agent unless the Farmworkers at least knew of CABEI's existence.  CABEI Answer Br. at 8, 13-14 and 17.  Again, CABEI cites no authority indicating that an agency relationship depends on third-party awareness of the principal's identity.  *Id.*  Instead, principals are liable on contracts even if their identity is undisclosed.  Restatement (Third) of Agency §§ 104(2) and 6.02.

Also, federal law required WKI to provide copies of WKI's Form ETA-790 "clearance order" to the Farmworkers.  29 U.S.C. § 1821(a) and 20 C.F.R. § 655.122(q).  That document identifies CABEI and its location.  APX 84-88.  Even

13

if the Farmworkers never saw APX 84-88, they had constructive notice of it pursuant to RESTATEMENT (THIRD) OF AGENCY § 1.04(4). *See also* APX 438-39 (Lusinger Depo. at 9:2-8, 12:18 to 13:9) (Form ETA-790 is customarily provided to workers).

    *4. Ronald Franzoy's Testimony*. CABEI argues that this Court should disregard Mr. Franzoy's testimony that he exercised control over WKI because "Mr. Franzoy's testimony about his operation establishes nothing about the relationship between the Cervantes Defendants and WKI or Mr. Campos." CABEI Answer Br. at 18. This argument ignores the record fact that Mr. Campos testified that he considered his relationship with all growers listed in his H-2A application—including Mr. Franzoy's farm and CABEI—to be the "same." APX 357 (Campos Depo. at 45:7-17); APX 364 (Campos Depo. 88:8-17); APX 366 (Campos Depo. at 7:9 to 9:13). Even without Mr. Campos's testimony, a factfinder could reasonably infer that the growers, who all signed the identical form Agreement with WKI and who all appear as part of the same H2A application, had the same capacity to control WKI. CABEI cites nothing to indicate why one grower should or did have greater control over WKI than another. CABEI observes that "Mr. Franzoy admitted he only wanted workers from Mexico," CABEI Answer Br. at 17-18 (citing APX 419), and then turns a

14

blind eye to Dino Cervantes's identical admission.  APX 401 (Cervantes Depo. at 32:20 to 33:15).

*5. Choice Between U.S. and Mexican Workers*.  CABEI asserts that "[t]here is no evidence to support a finding that Mr. Cervantes told Mr. Campos where to find labor; Mr. Campos did not tell Mr. Cervantes that the workers would come from any particular state or country."  CABEI Answer Br. at 5.  This assertion is consistent with the Farmworkers' agency claim and does nothing to undermine it. In writing, CABEI directed WKI to "recruit workers on its behalf," explicitly including both U.S. and foreign workers as required by H-2A statute and regulation.  APX 474; 8 U.S.C. § 1188(a); 20 C.F.R. §§ 655.100 and 655.120. WKI did exactly what is stated in this contract when it hired the Farmworkers, who are U.S. workers.  *See* Farmworker Br. 15 (citing record).  The fact that WKI recruited workers precisely as authorized in the CABEI-WKI agreement is sufficient to render the principal, CABEI, liable on WKI's contracts with the Farmworkers.

CABEI's *motive* in its dealings with WKI only confirms that CABEI was responsible for breach of the Farmworkers' employment contracts.  CABEI plainly wanted Mexican workers from WKI, for Dino Cervantes so testified:

> I don't believe I knew that [WKI could supply U.S. workers]. . . .  I can be fairly certain that, if there's other people that recruited people in the United States, there would be no reason to use Mr. Campos.  . . .  We have relationships with other people that would hire U.S. workers.  If [Mr.

Campos] was going to do the same thing that I have other people that can do it, why would I hire him?

APX 401 (Cervantes Depo. at 32:20 to 33:15). Despite this underlying motive, CABEI explicitly directed WKI to hire either U.S. or Mexican workers, APX 474, and WKI acted within the scope of this agency when it hired the Farmworkers. CABEI's effective replacement of WKI with CABEI's longtime labor contractor Jesus Maldonado, who hired other U.S. workers to perform the labor specified in the CABEI-WKI contract, only supports the Farmworkers' contention that CABEI either caused or cooperated in WKI's termination of its contracts with the Farmworkers. *See* Parts II.1. and II.2., *supra*.

    *6. H2A Application Process*. CABEI claims that "the Cervantes Defendants took no part in the [H2A] application process." CABEI Answer Br. at 7. This claim is disputed. The record shows that Dino Cervantes signed the Agreement with WKI knowing that this Agreement was necessary to access foreign labor, and Dino Cervantes signed this Agreement for the specific purpose of facilitating WKI's H2A application. APX 355 (Campos Depo. at 34:25 to 35:22); APX 398 (Cervantes Depo. at 18:14 to 19:1); *see also* 20 C.F.R. § 655.132(b)(4) (requiring an H-2A Labor Contractor to submit "[c]opies of the fully-executed work contracts with each fixed-site agricultural business [to which the H-2A Labor Contractor expects to provide H-2A workers]"). Consistent with the direct testimony that Dino Cervantes signed the Agreement specifically to facilitate WKI's access to

16

foreign labor, the Agreement contains unusual text that only makes sense because the text is required by H-2A regulation. *Compare* APX 474 (Agreement) (forbidding recruiters "from seeking or receiving payments from prospective workers for costs which are to be borne by the employer") *with* 20 C.F.R. § 655.135(k). By knowingly facilitating WKI's H-2A application, CABEI helped cause WKI to be subjected to the many requirements specified in 20 C.F.R. Part 655, including the regulations related to recruitment. APX 411 (Cervantes Depo. 723:6-19); *see also* CABEI Answer Br. at 20 (H-2A regulations imposed recruiting requirements on WKI). This is "control." *See* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/control ("Control" means "to exercise restraining or directing influence over: regulate"); Restatement (Second) of Agency § 51 ("authority to make a specified contract includes authority . . . to make it in a usual form and with usual terms"). CABEI urges the Court not to draw this inference but offers no authority or reason as to why doing so inappropriate. *See* CABEI Answer Br. at 19.

**III.    CABEI applies the wrong standard of review and ignores record evidence of joint employment.**

CABEI's analysis of AWPA joint employment is flawed in two respects.

First, CABEI invites this Court to weigh the seven joint employment factors and decide joint employment as a matter of law, as did the district court. CABEI

17

Answer Br. at 34-35.[4]  But on summary judgment, the question is not how the

factors are finally weighed, but rather whether the evidence viewed in the light

most favorable to the Farmworkers indicates that a trial is necessary to determine

joint employment.  The district court itself recognized that this is the proper

standard of review, APX 968, but then proceeded to weigh the factors without

applying this standard.  APX 980-81.  This is reversible error.

Second, CABEI ignores record evidence of joint employment.  Several

examples should suffice to indicate that CABEI's report of the evidence is

unreliable:

a.  CABEI asserts that "[t]here is no evidence that Plaintiffs were

economically dependent upon the Cervantes Defendants."  CABEI Answer Br. at

35.  This is at odds with CABEI's acknowledgement that "the farmers, including

the Cervantes Defendants, were WKI's only clients" and its choice to assume that

"WKI was entirely financially dependent on the Cervantes Defendants" rather than

contest the evidence of this dependence.  *Id.* at 21; *see also* Farmworker Br. at 11,

APX 360-61 (Campos Depo. at 72:10 to 75:8), and APX 368 (Campos Depo. at

14:17-20) (citing evidence that WKI had no money, no assets or tools, no earnings,

---

[4] CABEI also mentions an eighth factor, "no evidence of a 'joint employment' agreement," CABEI Answer Br. at 3, but no such agreement is necessary or relevant to the joint employment determination, which turns only on whether as a matter of economic reality, the workers are dependent on the alleged joint employer.  *See* Farmworker Br. at 38-41 (collecting authority).

no customers other than the four farmers listed in its H-2A application, and no capacity to pay workers without first being paid by the farmers).

b.  CABEI asserts that "[b]ecause Plaintiffs never actually worked for the Cervantes Defendants, there is no record evidence of control or supervision [of work or workers]" to prove the first factor indicating a joint-employment relationship between CABEI and WKI.  CABEI Answer Br. at 25-28.  This ignores the law cited by CABEI itself, which establishes that "power" to control work or workers is what indicates joint employment.  *Id.* at 24 (describing factors); Farmworker Br. at 40 (same).  Actual control is not necessary.  *See, e.g., Haywood v. Barnes*, 109 F.R.D. 568, 589 (E.D.N.C. 1986).  CABEI's complete "power" to supervise all work and workers supplied by WKI is proved by the record evidence that WKI had no knowledge of farming or farmworker supervision, so CABEI alone, and no one else could possibly direct supervision of any laborers supplied by WKI.  *See* Farmworker Br. 11 and 35-36.  CABEI chose not to dispute this evidence.  CABEI Answer Br. at 20.  Instead, CABEI mischaracterizes it, claiming that "Plaintiffs contend that evidence that Mr. Cervantes exercised control of [CABEI's longtime labor contractor Jesus] Maldonado and his work crew demonstrates that Mr. Cervantes would have acted similarly with Plaintiffs [in the future]."  CABEI Answer Br. at 26.  That misstates the Farmworkers' argument.  Instead, the Farmworkers claim that because WKI had no ability to supervise the

Farmworkers, CABEI had *no option* but to assign Mr. Maldonado, or some other CABEI employee, to ultimately supervise the workers, either of which indicates that CABEI acted as a joint employer. Farmworker Br. 41-43 & n.11 (describing the relevant record evidence of Mr. Maldonado's relationship to CABEI, and why the district court misconstrued it).

c. Without any citation to the record, CABEI claims that "[i]t is undisputed that, had Plaintiffs shown up to the Cervantes Defendants' lands on November 11, 2011 and presented themselves to work in accordance with the Agreement, Plaintiffs would have been hired for a fixed period . . . and their work relationship with the Cervantes Defendants would have been permanent . . . ." CABEI Answer Br. at 29. But WKI claims to have done everything "humanly possible" to honor its labor Agreement with CABEI, and discussions with CABEI are what ended the the CABEI-WKI relationship. CABEI then actually secured U.S. workers from Mr. Maldonado to perform the labor described in the CABEI-WKI Agreement, and left WKI's Jaime Campos to submit a sworn falsehood—drought—as his reason for failing to provide the promised work to the Farmworkers. *See* Part II, *supra* (citing record). Thus the record shows a genuine dispute as to whether WKI hired the Farmworkers pursuant to its authority as CABEI's agent, and then CABEI refused to honor those contracts. The Farmworkers had no obligation to persist and seek to enter into new contracts directly with CABEI (for lower wages).

20

## IV. CABEI does not dispute that the district court failed to explain its rulings as to civil conspiracy, abandonment, and damages as required by Rule 56(a).

To properly grant summary judgment, the text of Rule 56(a) states that district courts "should state on the record the reasons" explaining their decisions. Farmworker Br. at 45 (collecting authority). CABEI's Answer Brief never disagrees with this statement of law. Nor does CABEI ever attempt to cite where the district court met the Rule 56(a) standard in granting summary judgment as to civil conspiracy, abandonment, and damages. No such cite exists because the district court never met the standard.

As to abandonment and damages, the district court was entirely silent. CABEI claims that summary judgment may be affirmed nonetheless because the Farmworkers made "no effort to present argument or authority in support of their contention [on appeal] that summary judgment was improperly granted as to 'abandonment' and damages." CABEI Answer Br. at 38. Not so. *See* Farmworker Br. at 45. The district court's failure to offer any explanation for its summary judgment on these issues as required by Rule 56(a) deprives the Farmworkers of any opportunity to know what, in addition to the evidence and authorities that the Farmworkers already cited to the district court at APX 655-61, may be usefully presented on appeal as to these issues.

As to civil conspiracy, the district court began by properly holding that only "one of the conspirators" need commit a wrongful act to prove a civil conspiracy claim. APX 720 (Order) (quoting *Ettenson v. Burke*, 2001-NMCA-003, ¶ 23, 130 N.M. 67, 17 P.3d 440). The district court also properly recognized that the Farmworkers made *WKI and Jaime Campo's* wrongful acts the predicate for their conspiracy claim against CABEI. APX 697 (Order). But then, inexplicably and without explanation, the district court held that summary judgment is warranted on the Farmworkers' civil conspiracy claim against CABEI only because the record contains insufficient evidence that *CABEI* committed a wrongful act against the Farmworkers. APX 722 (Order) ("In light of the Court's holding that no genuine issues of material fact support their breach of contract, AWPA, and fraud claims [against CABEI], Plaintiffs['] civil conspiracy claims fail as a matter of law."). Because the district court correctly stated the elements of civil conspiracy under *Ettenson*, and then failed to apply its own statement of law in entering summary judgment on the civil conspiracy claim, the district court failed to explain its summary judgment decision as required by Rule 56(a). Farmworker Br. 46-48.

CABEI responds by arguing that *Ettenson* and its progeny require "that specific wrongful acts were carried out by Mr. Campos *and Mr. Cervantes* pursuant to the conspiracy . . . ." CABEI Answer Br. at 36 (emphasis added). This is wrong. Civil conspiracy is only a form of vicarious liability imposed to ensure

that persons who seek to benefit from another's wrongful conduct are responsible for it, even if all conspirators do not conduct the wrongful acts themselves. *See Nader v. Democratic Nat'l Committee*, 567 F.3d 692, 697 (D.C. Cir. 2009); *Pedroza v. Lomas Auto Mall, Inc*., No. 07-cv-591, 2009 WL 1325460, at *5 (D.N.M. Jan. 21, 2009). CABEI's argument is inconsistent with these authorities and their vicarious-liability rationale for civil conspiracy.

CABEI also argues that no record evidence indicates that Dino Cervantes had a meeting of the minds with Jaime Campos to accomplish an illegal objective, namely the importation of foreign workers in violation of the federal H2A statute and regulations. CABEI Answer Br. at 36-38. According to CABEI, "Plaintiffs obviously want a jury to be permitted to speculate that the Cervantes Defendants had no intention of hiring the workers WKI provided unless they came from Mexico. Plaintiffs have no evidence to support this scurrilous accusation beyond their conspiracy theory." *Id.* at 36 (citations omitted). But Dino Cervantes himself testified that "We have relationships with other people that would hire U.S. workers. If [Mr. Campos] was going to do the same thing that I have other people that can do it, why would I hire him?" APX 401 (Cervantes Depo. at 33:12-15). According to Mr. Campos, despite his best efforts the growers, specifically including CABEI, refused to accept U.S. workers and ordered Mr. Campos to cancel his H2A application. APX 374-75 and 594. Mr. Campos canceled the

application by inventing a lie regarding drought.  APX 427 (Franzoy Depo. at 89:6-10) ("bunch of kahooey").  Despite the alleged drought, Dino Cervantes turned to his longtime labor contractor Jesus Maldonado, who recruited U.S. workers to actually perform the work that was specified in CABEI's contract with WKI.  APX 454, 459 (Maldonado Depo. at 20:25 to 23:5 and 45:17-19).  This is ample evidence from which any reasonable factfinder could conclude that CABEI only wanted Mexican workers from WKI, and when that proved impossible, CABEI severed its relationship with WKI and turned to its customary source of U.S. labor.  Because CABEI has always had access to all of the U.S. labor it has ever needed, CABEI had no legitimate reason to ever have become involved with WKI.  APX 459 (Maldonado Depo. at 45:13-19); APX 791 (Maldonado Depo. at 14:15-24).

CABEI reports to this Court the record evidence of Mr. Campos's stated rationale for wanting to "help both the farmers and the foreign laborers," namely that U.S. farm laborers are unreliable.  CABEI Answer Br. at 3-4.  A plausible alternative rationale is that foreign laborers are more easily exploited than U.S. workers.  The record here would allow a factfinder to conclude that Jaime Campos never intended to pay the $9.71 per hour required by federal H2A law any more than he intended to prefer U.S. workers, and instead planned to pay at most the New Mexico minimum wage of $7.50 per hour.  *See* APX 428 (Franzoy Depo. at

103:9-11) ("Well, they are only getting $4 a day in Mexico. I think that's a big improvement, to come over here and make $7.50 an hour."); APX 454, 458 (Maldonado Depo. at 20:8-13, 36:8-17, and 37:17-19) (CABEI only paid $7.50 per hour to the workers who performed the work specified in the CABEI-WKI contract.). The record evidence indicating that CABEI never agreed to pay the $9.71 per hour required by federal law, APX 399 (Cervantes Depo. 24:24) ("wages were never discussed") only confirms that CABEI had no legitimate reason to ever have become involved with WKI.

## CONCLUSION

The Court should reverse the district court's summary judgments and remand for trial of all Farmworker claims against Cervantes Agribusiness and Cervantes Enterprises, Inc.

December 5, 2019

Respectfully submitted,
TEXAS RIOGRANDE LEGAL AID
1331 Texas Avenue
El Paso, Texas 79901
(915) 585-5120

*/s/ Jerome Wesevich*
Jerome Wesevich
  jwesevich@trla.org
Christopher Benoit
  cbenoit@trla.org
*Attorneys for All Appellants*

## CERTIFICATE OF DIGITAL SUBMISSION

In accord with the Court's CM/ECF User's Manual, I hereby certify that all required privacy redactions have been made from the foregoing Reply Brief. In addition, I certify that the hard copies of this pleading that may be required to be submitted to the court are exact copies of the ECF filing, and the ECF submission has been scanned for viruses with the most recent version of a commercial virus scanning program—specifically Sophos Endpoint Security, Version 10.8, Updated December 3, 2019) and, according to the program, is free of viruses.

*/s/ Jerome Wesevich*
Attorney for Appellants

## CERTIFICATE OF COMPLIANCE

Pursuant to FED. R. APP. P. 32(g), Counsel for Appellants certifies that this document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B), because, excluding the parts of the document exempted by Rule 32(f) and 10th Cir. R. 32(B), this document contains **5,949** words. Counsel for Appellants further certifies that this document complies with the typeface requirements of Rule 32(a)(5) and 10th Cir. R. 32(A), and the type-style requirements of Rule 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Times New Roman in 14-point font.

*/s/ Jerome Wesevich*
Attorney for Appellants

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2019, I served a true, complete, and correct copy of the foregoing Reply Brief on the following counsel for all Appellees by digital submission via email and the Court's CM/ECF program: Joseph Cervantes, 2601 S. Espina St., Las Cruces, NM, 88001, (575) 526-5600, joe@cervanteslaw.com.

*/s/ Jerome Wesevich*
Attorney for Appellants